Sparta Gas & Electric Company, Appellee, v. Illinois Southern Railway Company, Appellant.

1. DEFINITIONS—*"switching" defined.* Switching is defined to be the movement of a car to be loaded or unloaded, or the movement of a car between railroads, at a charge for the services rendered within designated switching limits, the road performing the services not participating in the freight rate.

2. RAILROAD AND WAREHOUSE COMMISSION—*what is switch movement of cars as contemplated by rule 23.* The word "switching," as used in said rule, is synonymous with the word "transferring." The service contemplated by such rule is the movement of loaded cars to or from the junction of another railroad for distances less than three miles, as distinguished from the hauling or transporting of them from one station or place to another on the same road.

3. RAILROAD AND WAREHOUSE COMMISSION—*what not switch movement of cars as defined by rules.* *Held,* under the evidence, that the services rendered by the carrier in this case was not a switch movement of cars as defined by the rules of the Railroad and Warehouse Commission, but that in the services rendered all of the elements of a regular transportation were found, such as collection of the cars and placing them for loading, the haul after they were loaded, and the loss of use of cars at the end of the haul. A recovery for an alleged excessive tariff charge was reversed.

Appeal from the Circuit Court of Randolph county; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the October term, 1909. Reversed. Opinion filed April 9, 1910.

**Statement by the Court.** This appeal was taken from a judgment of the Circuit Court of Randolph county in favor of Sparta Gas & Electric Company against The Illinois Southern Railway Company, for $1,248.51. The declaration contains one hundred and thirty-three counts, the first of which charges in sub-

284        APPELLATE COURTS OF ILLINOIS.

Sparta G. & E. Co. v. Illinois South. Ry. Co., 155 Ill. App. 283.

stance that by rule 23 of the Railroad and Warehouse Commission made and published prior to January 1, 1900, the reasonable maximum rate for switching loaded cars over said railroad for distances not exceeding three miles, was fixed at two dollars per car; that on February 18, 1905, defendant switched from the mine of the Moffat Coal Company near Sparta, Illinois, over defendant's railroad to plaintiff's electric plant in Sparta, a distance of less than three miles, one car numbered 4,051 loaded with 60,000 pounds of coal for plaintiff, the switching charge to be paid by plaintiff; that said car in being so switched, did not move between two regularly established stations of the defendant's road, nor was a regular waybill made for said car; that for switching said car, defendant charged and received from plaintiff six dollars, which sum was four dollars in excess of the maximum switching charge fixed as aforesaid by said Commission; wherefore, by force of the statute, an action has accrued to plaintiff to have and demand of defendant the sum of twelve dollars, three times said excess, and also reasonable attorney's fee.

Counts 2 to 133, inclusive, are the same as count 1 differing only as to date, car number and overcharge claimed, with the exception that counts 84 to 133, inclusive, are based on said rule 23 as amended and published prior to July 1, 1906, by said Commission, in which said reasonable maximum rate for switching cars over said railroad for said distances, was fixed at ten cents per ton with a maximum rate of four dollars per car and a minimum rate of two dollars per car.

The total overcharge so claimed on all cars so switched was $505.11.

The necessary facts are as follows: Said mine is located 8,739 feet by rail from appellee's plant on the Rosborough branch of the Illinois Southern Railroad, and the place is called Moffat's Station by the appellant. This branch also extends farther on to Shaw's, another coal mine. When the mines are in operation

an average of ten or twelve cars per day are shipped from Moffat's, and, of six or eight cars per day from Shaw's, to various points in Illinois, and Missouri. About once a year scrap-iron is also shipped from Moffat's; and the only freight shipped to Moffat's, as a rule, is supplies for the mine. There is no station agent or station house there. No passenger trains run there. Only an ordinary coal mine is there with the usual switch tracks, screens, chutes and other mine buildings and mine machinery for hoisting, screening and loading the different sizes of coal into the railroad cars for shipment. The out-bound business from Moffat's, called by appellant a prepay station, is larger than any other of the twenty-three or twenty-four stations on appellant's road. No trains are run to these mines when they are not in operation. One or two trains each way are run when the mines are working. The cars are collected at Sparta from the various points on appellant's road by the local train or by what is known as the "utility crew," and are then distributed to the mines on this branch road. After the cars are loaded they are collected into a train by the train crew and hauled to Sparta and the various points to which they are billed. The appellee ordered its coal from the Moffat Coal Company, a car at a time. The coal company then made an order on the agent of appellant at Sparta for an empty car for the shipment which came along with the other cars ordered by them for other shipments; and when loaded the coal company directed the agent at Sparta to deliver appellee's car to it at Sparta, and the train crew so delivered it by direction of said agent. A way-bill was issued by the agent at Sparta for all cars so shipped to appellee, and it was charged a uniform rate of twenty cents per ton for all of said coal so shipped. If appellee ordered its car of coal in the morning it usually got it in the evening of the same day or the next evening. If ordered before one o'clock P. M., and if the coal company diverted a car, that is shipped it a car loaded for

some other person, the car would reach appellee's plant the evening of that day. Appellee had two free days in which to unload the cars so shipped without demurrage charges. About seventy cars per year were so shipped to appellee, and all the cars were the property of the appellant, and the movements were entirely on its own rails. Moffat's is situated outside of the switching limits of Sparta.

Said Railroad and Warehouse Commission by its schedule of maximum freight rates also fixed the maximum freight rate for hauling soft coal over appellant's road from January 1, 1900, to July 1, 1906, for distances of two miles and under, at slightly over twenty-four cents per ton; and, from and after July 1, 1906, it fixed said rate at a fraction over twenty-five cents per ton.

W. T. ABBOTT and R. J. GODDARD, for appellant; JOHN G. DRENNAN. of counsel.

H. CLAY HORNER, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

It is stated by counsel for appellee in his brief that, "Appellee based its case on Rule 23 which defines a switch movement and prescribes a maximum rate, which rate is *prima facie* correct." It is evident that unless the services rendered by appellant for which it is alleged the extortionate charges were made, can be properly classified as switching services within the meaning of said rule, that appellee cannot maintain its suit under said declaration. The declaration charges in every count that the services rendered were for switching loaded cars; that the extortionate charges for which damages are claimed are switching charges in excess of those permitted by said rule; and that the charges fixed by said rule are *prima facie*, and, in fact, correct and reasonable. Appellee does not undertake

to challenge the rates fixed by said Commission in said rule or in any of its schedules of reasonable rates as being unreasonably high. It bases its claims on the assumption that the rates fixed by the said Commission are reasonable and legal and that the appellant must be governed by them. Appellant insists that said rule has no application to the character of services rendered by it to appellee and that the uncontroverted evidence in this record so proves.

The two rules of the Railroad and Warehouse Commission referred to in said pleadings and relied on as the basis of recovery in this cause are worded alike, except as to the amount fixed as such reasonable charge, and read as follows:

"The reasonable maximum rate for switching loaded cars for distances not exceeding three miles shall be two dollars per car [ten (10) cents per ton, with a maximum rate of four dollars per car and a minimum rate of two dollars per car.] Switching includes the hauling of loaded cars from the station yards, sidetracks, elevators or warehouses to the junctions of other railroads when not billed from stations on its own road to said junctions, and from junctions of other railroads to the stations, sidetracks, elevators and warehouses situated on the tracks owned or controlled by the railroad company doing said switching; it is that transfer charge ordinarily made for moving loaded cars for short distances for which no regular waybill is made and which do not move between two regularly established stations on the same road."

Rule 23 in force July 1, 1900, is as above noted with the brackets and the words and figures within the brackets omitted. Said rule as amended and in force July 1, 1906, is worded as above quoted with the brackets and the words preceding the first bracket "two dollars per car," omitted.

It is very clear that the two definitions furnished by said rules for switching, that follow the first sentence in said rules and down to the semicolon, are not applicable to, and do not include, such services in question

in this case. The services in question in this case were all performed on appellant's rails, with its own cars, and the deliveries of the cars were on its own tracks to appellee at its plant. No other railroad figured in the haul or in the delivery of the cars. Appellee concedes this, but claims that the language following the semicolon in said rules, defines switching and that the services in question by said language must be denominated, and charged for, as a switching service. A close examination of the language in question seems to show that it is simply a definition or further explanation of the term "rate," found in the first sentence of these rules. By the first sentence we are positively informed that the "rate" spoken of is "for switching loaded cars for distances not exceeding three miles." The last clause informs us that this "rate" is a "transfer charge ordinarily made for moving loaded cars," etc. The word "transfer," as is said by appellant's counsel, is the "key" to the correct interpretation of said rules. The "rate" dealt with in these rules is a transfer or switching charge as distinguished from a short haul or transportation charge, and the service contemplated and defined in said rules is transfer service as distinguished from transportation service. The word "switching" as ordinarily used when spoken with reference to the movements of cars has reference to the movement of cars from one rail or track to another rail or track, or the moving or changing cars from one railroad to another railroad. When this service is performed by a railroad on its own tracks with its own cars and engines as the beginning or ending of a haul on its road, for which a freight rate is to be charged, or has been charged, by it per hundred weight or per ton, no charge is usually made or contemplated for the switch movement. The switching in such case is usually for making up a train, or for the delivery of the car at its destination. But the word "switching" as used in said rules is synonymous with the word "transferring" and has reference to the movement of loaded

cars from one railroad to another for distances less than three miles as distinguished from the hauling of them on the same road from one station or place to another with no intention to take it to or from the junction of another road. The services rendered in question are not switching services as defined by said rule, but were for transportation services for which under the regulations of said Commission the rate per ton for soft coal for two miles and under as fixed by said Commission might be charged. The difference in the process of shipping a car of coal from Moffat's to Sparta and from Moffat's to Chester is in the distance the car would travel. It makes no difference whether Moffat's is on a spur-track or a regular branch road, so far as we can see, or whether Moffat's is or is not a regular station, in determining whether or not appellant may charge the regular transportation rate per ton for the services in question. Without undertaking to decide what were the powers or limitations of the Commission in defining the term "switching" and in fixing rates therefor, we simply say that it seems clear to us that the said rules have no application to the services in question and that appellant was clearly authorized by said Commission to charge and receive a rate of twenty cents per ton for the coal so transported to appellee and therefore it has not violated said rule or the law and is not liable to appellee in this case in any sum. All of the elements of a regular transportation service are found in the service rendered, such as the collection of the cars and placing them for loading, the haul after they were loaded, and the loss of two days' use of the cars at the end of the haul. The service contemplated by the rules is simply moving loaded cars to or from the junction of another railroad, the cars so moved usually belonging to another road, or if belonging to the road doing the switching it is usually paid a *per diem* for the use of its cars by the junction road, but does not share in the transportation charge of the junction road.

The Supreme Court of Iowa in defining the words, "transfer of freight, passengers or express matter," in case of The City of Council Bluffs v. K. C. St. J. & C. B. R. Co., 45 Iowa, p. 346, said: "It expresses the act of removing freight, passengers and express matter, and in the connection in which it occurs in the Statute implies the removal of these subjects of transportation from the custody of one common carrier to that of another—from one railroad to another—for the purpose of completing their transportation to the place of destination."

In State v. C. M. & St. P. Ry. Co., 88 Iowa, 445, it is said: "The Commissioners do not, nor do we, think that such a service is bounded always by yard limits, for there may be outside trackage on which such a service, under proper regulations, would be rendered, but we hold, as we think the Commissioners have, that a service upon a main line, outside of yard limits and under orders, as in cases of regular or special trains, is not a switching service."

"The test of distinction between transportation service relating to loaded freight cars for which a railway company can lawfully charge tonnage rates, and switching or transfer service for which it is restricted to a fixed charge per car, is not whether the movement of the cars involves the use of a portion of the company's main line, or that of another; for there may be a transportation service over one or more spur tracks of the same company, if the contract of affreightment requires no movement over other tracks or lines of railway; whereas a switching or transfer service is one which precedes or follows a transportation, and applies only to a shipment on which legal freight charges have already been earned, or are to be earned." 8 Words and Phrases, 7070, citing Dixon v. Central of Ga. Ry. Co., 110 Ga. 173.

Switching is defined to be, "The movement of a car to be loaded or unloaded, or the movement of a car between railroads, at a charge for the services ren-

dered within designated switching limits; the road performing the service not participating in the freight rate.'' Proceedings of Am. Ry. Ass'n, Vol. 4, p. 390.

"The hauling of a loaded car from any factory or mine on the main line of a railroad, for any distance, whether it be one mile or ten, to a regular station on the line of the same railroad, there to be delivered to the consignee, does not come within the meaning of switching, as defined by Rule 23, especially when the station to which it is hauled is the end of the haul and final delivery of the commodity in the car.'' Miller v. C., C., C. & St. L. Ry. Co., Decision of. Railroad W. Commission, Oct. 23, 1899.

We agree with the learned counsel for appellee that in considering the reasonableness of the charge, the whole income of the appellant should be considered; but we must decide that said rule 23 is not applicable to the facts of this case, and that for the reasons indicated appellant's motion to direct a verdict for the appellant should have been given by the lower court. The judgment of the lower court is therefore reversed without remanding.

*Reversed.*

Finding of facts to be incorporated in the judgment: We find as ultimate facts in this case that the services in question rendered by appellant for the appellee, were not switching or transfer services within the meaning of said rule 23, and that the defendant is not guilty of charging extortionate freight or switching rates as charged in the declaration.