# WABASH RAILROAD COMPANY ET AL. *v.* PRIDDY ET AL.

[No. 21,970. Filed May 7, 1913.]

1. CARRIERS.—*Freight.*—*Interstate Shipments.*—*Establishment of Rates.*—A through shipment cannot be undertaken without the establishment and publication of a through rate, or the ascertainment and application of the aggregate of the local rates, as approved by the Interstate Commerce Commission. p. 490.

2. CARRIERS.—*Freight.*—*Interstate Shipments.*—*Establishment of Rates.*—*Presumptions.*—Where a through interstate shipment is undertaken, it must be presumed that the law has been complied with by the establishment and publication of through rates governing such shipment. p. 490.

3. CARRIERS.—*Freight.*—*Establishment of Rates.*—*Effect.*—Under the Interstate Commerce Act, when joint rates, or local rates

applicable to a through shipment, are filed with the Commerce Commission and approved, they are binding on both shipper and carrier and must be followed.  p. 491.

4. CARRIERS.—*Freight.—Establishment of Rates.—Reasonableness of Rates.—Approval of Interstate Commerce Commission.—Effect.* —When rates have been fixed, filed with the Interstate Commerce Commission and by it approved and published, they must be regarded as just and reasonable, and must stand until changed on application to the Commission.  p. 491.

5. CARRIERS.—*Freight.—Limitation of Liability.—Negligence.*—A carrier cannot, under the provisions of the Interstate Commerce Acts, be relieved of its obligations and duties as a common carrier by an agreement to give a shipper the lesser of two established rates, nor can its liability for negligence be released by the shipper's acceptance of either rate.  p. 492.

6. EVIDENCE.— *Judicial Notice.— Statutes.— Interstate Commerce Act.*—The court knows judicially that under the Interstate Commerce Act none other than the tariff rate can be charged.  p. 494.

7. CARRIERS. — *Freight. — Limitation of Liability. — Contracts. — Rates.*—The carrier is bound to carry upon the schedule of rates applicable to the shipment tendered, and cannot contract against its negligence, and an attempt to fix some other schedule of rates as applicable to a private carriage is unlawful.  p. 494.

8. COMMERCE. — *Regulation. — Interstate Shipments. — Freight. — Rates.*—Since the Interstate Commerce Act covers the entire field of rates, and rate making, as to the interstate commerce, state legislation on that subject is thereby superseded.  p. 494.

9. CARRIERS.—*Freight.—Limitation of Liability.*—Under the federal acts governing interstate shipments, contracts may be made limiting the liability of the carrier as to certain particulars with reference to the shipment.  p. 494.

10. COURTS.—*Rule of Decision.*—Where the Supreme Court of the United States has declared a rule applicable to cases arising under the Interstate Commerce Act, the state courts are bound thereby and must follow it.  p. 495.

11. COMMERCE.— *Freight.— Limitation of Liability.— Statutes.*— That part of the act of April 15, 1905, making any limitation of contract of a carrier's common law liability a matter of defense and requiring the carrier to show that the contract is based upon a sufficient consideration, is reasonable, and was fairly entered into (Acts 1905 p. 58, §2, §3919 Burns 1908), was superseded by the Interstate Commerce Act.  pp. 495, 497.

12. CARRIERS.—*Freight.—Rates.—Agreement.*—There is no difference in principle between a shipment at an agreed valuation, and a shipment where there is no agreed valuation, but in which

there is an agreement as to the liability of the shipper in consideration of a reduced rate. p. 497.

13. APPEAL.—*Review.*—*Harmless Error.*—*Ruling on Demurrer.*—Sustaining demurrers to special answers is harmless, where the facts pleaded are provable under the general denial. p. 498.

14. CARRIERS.—*Live Stock.*—*Action for Injury.*—*Burden of Proof.*—In an action for injury to live stock while in shipment, where the owner had no agent accompanying the shipment, the carrier has the burden of proving any excuse for the injuries. p. 498.

15. CARRIERS.—*Connecting Carriers.*—*Live Stock.*—*Action for Injury.*—*Burden of Proof.*—In an action against several railroad companies for injury to live stock in transportation, the burden of separating the amount of damages occurring on the separate lines of railroad was on defendants. p. 498.

16. CARRIERS.—*Connecting Carriers.*—*Live Stock.*—*Injury.*—*Joint Liability.*—Where negligence is charged against all carriers engaged in carrying a shipment of live stock, they may be sued jointly or severally, though there is no privity between them. p. 500.

17. CARRIERS.—*Connecting Carriers.*—*Live Stock.*—*Injury.*—*Liability.*—The existence of a special contract creating an extra-terminal liability is not essential to hold a connecting carrier liable for damages not occurring upon its own line. p. 500.

From Huntington Circuit Court; *Samuel E. Cook,* Judge.

Action by John L. Priddy and others against the Wabash Railroad Company and others. From a judgment for plaintiffs, the defendants, except the Louisville and Nashville Railroad Company, appeal. (Transferred from Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Reversed.*

*E. C. Field, H. R. Kurrie* and *Stuart, Hammond & Simms,* for appellants.

*Eichhorn & Vaughn* and *Lesh & Lesh,* for appellees.

MYERS, C. J.—Complaint in one paragraph alleging that appellants and the Louisville and Nashville Railroad Company, were on January 27, 1907, corporations engaged as common carriers, and as such operating lines of railroad in Indiana; that the Louisville and Nashville Railroad Company operated a line between Nashville, Tennessee, and Louisville, Kentucky; the Chicago, Indianapolis and Louis-

ville Railway Company from Louisville, Kentucky, to Lafayette, Indiana; and the Wabash Railroad Company, from Lafayette, Indiana, to Huntington, Indiana. That on January 27, 1907, plaintiffs delivered to the Nashville, Chattanooga and St. Louis Railway Company, not sued in this action, a corporation engaged in operating a railroad as common carrier for hire from the town of Shelbyville, Tennessee, to the city of Nashville, Tennessee, for carriage to the city of Huntington, Indiana, twenty-eight mules, all alive and sound, and of the value of $6,500, the title to which was in the plaintiffs; that said property was delivered to said railroad company as such carrier, to be shipped, carried and delivered, at the regular freight charge by said defendants and said Nashville, Chattanooga and St. Louis Railway Company, for carriage of such property, consigned to plaintiffs; that the regular freight rates for such shipment over said lines from said Shelbyville, Tennessee, to Huntington, Indiana, was $113; that said Nashville, Chattanooga and St. Louis Railway Company, and said defendants undertook to, and agreed for said consideration of $113, to ship and cause to be shipped, said mules from Shelbyville, Tennessee, to Huntington, Indiana; that the mules were delivered to the Nashville, Chattanooga and St. Louis Railway Company, and by it delivered in good condition to the Louisville and Nashville Railroad Company. It is alleged that the shippers were excluded from accompanying the train carrying the mules, and various detailed acts of alleged negligent omission and commission were charged against the carriers, after the receipt of the car by the Louisville and Nashville Railroad Company, such as, failure to water or feed, unnecessary delay in transportation, suffering the animals, with notice that some of them were down in the car and fastened with legs through the car, and being trampled upon and injured by the others, to be without attention paid to them, and showing that the weather became extreme, and for want of water and feed, the animals

were greatly injured in their market value. It is alleged in the complaint "that at the time of said shipment there was a traffic agreement and arrangement existing between all of said railroad companies as common carriers in the shipment of property over their lines of railroad, and a partnership or running agreement between said defendants, that by and in accordance with said partnership, traffic, and running arrangement, the said carload of mules were shipped in one car from Shelbyville, Tennessee, over said line of railroad to Huntington, Indiana. That no transfer was made of said mules into any other car during the entire shipment. That after said mules were loaded into said car at Shelbyville, they were not unloaded until they reached Huntington. That by said traffic agreement, running arrangement and partnership between said companies, they were to share in the profits and losses resulting from said shipment. That said defendants each shared in the profits of said freight charge of $113, which was divided between them according to said traffic agreement then and theretofore existing, as herein alleged. That they were overcharged and compelled to pay an excess freight of $51 above the price agreed upon, which was shared in between all the said companies by virtue of said arrangement between themselves." Demand for damages.

Appellants each unsuccessfully demurred to the complaint for want of facts sufficient to constitute a cause of action, and they answered separately by general denial.

The Wabash Railroad Company, for a second paragraph, answered, that the mules were shipped under a written contract, set out in the answer, and denied any partnership or agreement between it and any of the other companies, or any agreement to share in the profits of shipping anything, but that each of the companies had specific charges based upon the character and kind of freight, and neither had any authority to bind it by any contract, for negligence on the line of another company, and set out specifically a clause

in the written contract providing for delivery to connecting carriers upon such terms and conditions as the connecting carrier will accept, providing that the terms and conditions of the bill of lading should inure to any carrier unless they should otherwise stipulate, but in no event shall one carrier be liable for the negligence of another. That it received the car of mules, February 4, 1907, at 2 p. m., and delivered it at Huntington at 11 a. m. on the 5th. That before delivery to the Wabash Railroad Company, the Chicago, Indianapolis and Louisville Railway Company, fed and watered the mules, and that 21 hours after they were watered and fed, they were delivered at Huntington, and that before it started the car of mules, it had express orders from appellees not to water or feed between Lafayette and Huntington. That it transported the mules carefully, and no injury occurred while in its charge, and if there was an injury, it occurred prior to delivery to it.

The third paragraph avers shipment under a written contract, one specification of which is, that "The party of the second part, (the shipper) hereby assumes all risk of injury which the animals or any of them may receive in consequence of either or any of them being wild, unruly or weak, or by maiming each other or themselves," and the injuries arose solely by reason of their being wild, unruly and weak, and by reason of their maiming themselves and not otherwise, and that none of their injuries complained of occurred on account of the carelessness or negligence of any of the roads over which the stock was shipped.

Appellant Chicago, Indianapolis and Louisville Railway Company, answered by a second paragraph, setting up shipment under the same written contract, and counts as a defense upon the same clause exempting it from loss by reason of the character of the animals, and the provision that it shall be the duty of the shipper to securely place the animals in the car, and see that the car is properly fastened to prevent escape from it, and another clause providing that

the damages in case of loss shall be the value at the place of shipment, and not to exceed $75 for each animal. The paragraph is otherwise the same as the third paragraph of answer of the Wabash Railroad Company.

The third paragraph of the Chicago, Indianapolis and Louisville Railway Company counts upon the written contract of shipment, and alleges that there were at the time two joint through shipping rates on file with the Interstate Commerce Commission, between Shelbyville, Tennessee, and Huntington, Indiana, over the lines over which the shipment moved, and they were the only lawful rates which could be applied to the shipment, and all the railways were parties to such joint tariff; that it was expressly provided in the tariff that a lower rate could only be enjoyed by a shipper entering into a contract limiting the common-law liability, and that plaintiffs were given said lower rate of freight, and if they had not done so, would have been charged a higher rate, and received a rate twenty per cent lower than the rate which would otherwise have applied, and that this defendant, and all other railroads over which shipment was made complied with their contract, and carried the stock carefully, and without negligence. Demurrers for want of facts to constitute a defense were sustained to the second and third paragraphs of answer of the defendants, Wabash Railroad Company, and Chicago, Indianapolis and Louisville Railway Company, respectively. The Louisville and Nashville Railroad Company was also a defendant, and filed a general denial, and affirmative answers, but upon a finding of facts and conclusions of law stated, that company was released.

There were exceptions to the conclusions of law by the other two companies, but no question is raised as to the conclusions of law, and over separate motions for a new trial, judgment was rendered against those companies. A term appeal was taken, and the Louisville and Nashville Railroad Company is not a party here. The errors assigned

by each appellant, and not waived, are the rulings on the demurrers to the complaint and the answers, an original assignment of want of jurisdiction of the subject-matter, and overruling their motions for a new trial.

They could have shown under the general denial, unless the act of 1905 (Acts 1905 p. 58) is valid and applicable, that the injury did not occur on their lines, or from negligence, if the facts so be, and also the existence of the special contract. As to the question of rates, or the reasonableness of rates, another question may be presented. It is urged that even if the Indiana statute (Acts 1905 p. 58, §§3918, 3919 Burns 1908), can be held to be valid, the answers are good under that statute. The argument is,

1. that a through shipment could not have been undertaken without the establishment and publication of a through rate, or the ascertainment and application of the aggregate of the local rates, as approved by the Interstate Commerce Commission. This position is definitely settled. *Chicago, etc., R. Co.* v. *Kirby* (1912), 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033; *Kansas City, etc., R. Co.* v. *C. H. Albers Comm. Co.* (1912), 223 U. S. 573, 32 Sup. Ct. 316, 56 L. Ed. 556; *Southern R. Co.* v. *Reid* (1912), 222 U. S. 424, 32 Sup. Ct. 140, 56 L. Ed. 257; *Louisville, etc., R. Co.* v. *Behlmer* (1900), 175 U. S. 648, 650, 20 Sup. Ct. 209, 44 L. Ed. 309; *Cincinnati, etc., R. Co.* v. *Interstate Commerce Com.* (1896), 162 U. S. 184, 16 Sup. Ct. 700, 40 L. Ed. 935; *J. C. Shaffer & Co.* v. *Chicago, etc., R. Co.* (1911), 21 Inters. Com. Com. Rep. 8. This being true,

2. we are bound to assume, as a through shipment was undertaken, that the law had been complied with, and that the rates for unrestricted liability, and the rates for limitation of liability had been complied with. It may be that differential and discriminative rates may be made with respect to special or unusual service for special remuneration, where the same facilities and services are furnished to all who apply for them. *State, ex rel.,* v. *Atlantic Coast Line*

*R. Co.* (1906), 52 Fla. 646, 41 South. 705, 12 L. R. A. (N. S.) 506.

The Interstate Commerce Act provides, that when joint rates, or local rates applicable to a through shipment are filed with the Commerce Commission and approved, they are binding on both shipper and carrier, and 3. must be followed. *Kansas City, etc., R. Co.* v. *C. H. Albers Comm. Co., supra; Southern R. Co.* v. *Reid, supra; Baltimore, etc., R. Co.* v. *United States, ex rel.* (1910), 215 U. S. 481, 30 Sup. Ct. 164, 54 L. Ed. 292; *Texas, etc., R. Co.* v. *Abilene Cotton Oil Co.* (1907), 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; *Texas, etc., R. Co.* v. *Mugg* (1906), 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011. It is conceded by appellants that there can be no contract against liability for negligence.

The second point in the argument is, that, as it must be assumed that rates had been fixed and published, those rates must be regarded as just and reasonable; that the 4. sole power and authority is vested in the commission to determine when they are just and reasonable, and when they have been fixed, filed with the commission, approved and published, the question is no longer an open one as to what is a reasonable or just rate, and that the rate must stand until, and unless, upon application to the commission, the rate is changed. This proposition we think is also settled. *Texas, etc., R. Co.* v. *Abilene Cotton Oil Co., supra; Baltimore, etc., R. Co.* v. *United States, ex rel., supra; Southern R. Co.* v. *Reid, supra; J. C. Shaffer & Co.* v. *Chicago, etc., R. Co., supra.*

The third point is, that, even if the Indiana statute be valid, §3919, *supra,* has been complied with, because the question of the reasonableness of the rate is not an open one, and hence was not open to inquiry in this case. The Wabash Railroad Company does not allege that there were two rates; the Chicago, Indianapolis and Louisville Railway Company, does. We would be bound to assume where a

through shipment was made, that there had been a joint through through rate, or local rates applying to through shipments, but the contract is set out showing on its face, that there were two rates, and that the tariff rate for limited liability was double the rate of the special contract rate, and that the carriers transported live stock only as per above tariff (the regular tariff) except in consideration of a lower rate liability is limited. The answer of the Chicago,

5. Indianapolis and Louisville Railway Company alleges directly that there were two rates, and the contract pleaded recites that "The same being a special rate, lower than the tariff rate charged when this contract is executed, the said party of the second part hereby relieves said party of the first part from the liability of a common carrier in the transportation of said stock, and agrees that such liability shall only be that of a private carrier for hire." This agreement did not release appellants from their obligations and duties as common carriers, from the fact of giving appellees the lesser of two established rates. *New York Cent. R. Co.* v. *Lockwood* (1873), 17 Wall. 357, 21 L. Ed. 627. Such contract in the first place is void under §20, par. 10, Interstate Commerce Acts, as to the initial carrier, and unless it runs to, and for the benefit of a connecting or intermediate carrier, it would be without a special contract as to any features of the shipment, and it does so run. *Kansas City, etc., R. Co.* v. *Carl* (1913), 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683. But neither may the intermediate carrier contract against its negligence, even if there be two or more tariff rates, as there may be, depending on value or character of the freight, or special facilities or services, or other considerations, but they would alike fall within the prohibition of the law and the commerce act, against limitation of liability for negligence. In the second place, we do not understand that under the act, there may be two tariff rates, by one of which liability for negligence can be released, and under the other

it can not be released. It can not be released in either case. *Lake Erie, etc., R. Co.* v. *Teeters* (1906), 166 Ind. 335, 77 N. E. 599, 5 L. R. A. (N. S.) 425; *Pittsburgh, etc., R. Co.* v. *Higgs* (1906), 165 Ind. 694, 76 N. E. 299; *Louisville, etc., R. Co.* v. *Faylor* (1890), 126 Ind. 126, 25 N. E. 869; *Woodward & Dickerson* v. *Louisville, etc., R. Co.* (1909), 15·Inters. Com. Com. Rep. 170, 173; *Carstens Packing Co.* v. *Butte, etc., R. Co.* (1909), 15 Inters. Com. Com. Rep. 432.

If the question stood only upon the proposition of the rates being fair and reasonable, it might be that the statute would not be subject to the construction or attack here made, but it goes much further and provides that the carrier must show that the "contract is based upon a sufficient consideration, that it is reasonable, that it was fairly entered into by the shipper after he had been given a *bona fide* and full opportunity to ship at a fair and reasonable rate without limitation of liability." The answer is not drawn upon the theory, nor is it claimed that it is an answer in compliance with §3919 Burns 1908, *supra,* as a valid enactment, but that the facts alleged, coupled with the Interstate Commerce Act, meet all the requirements of that section. It must be held we think that as a rate must have been fixed and approved by the commission, it follows that the rate here must be regarded as a sufficient consideration and reasonable. The contract contains limitations and conditions as to the prices to be paid for loss or damage to each animal, the place where the valuation shall be fixed, conditions as to care and feeding, and an assumption of risk on the part of the shipper of injury by the animals to each other, and of almost every chance of injury possible, except· negligence of the agents, or employes of the primary carrier, and that "delivery to connecting carriers for transportation shall be on such terms and conditions as the carrier may be willing to accept," and others. Some of the limitations may be void, but some of them are valid, and proper subjects of contract.

We know judicially that there must have been at least one rate, if the Interstate Commerce Act was complied with, which is to be presumed. Therefore there could 6. be no other than the tariff rate charged under that act, whether one or more. The language of the contract is, that "The same being a special rate lower than the tariff rate charged when this contract is executed," discloses at least two rates. We must assume the two rates alleged in the answer to have existed, were the rates under a common-law shipment, and a limited liability rate, and one or the other must have been applied, because 7. there could legally be no other. An attempt to fix some other schedule of rates as applicable to a private carriage, is not only not permissible, but is unlawful, and the shipper in this case was bound to pay, and the carrier bound to carry upon the schedule of rates applicable to the shipment, and could not contract against negligence in either case. What might be the effect of the presence of evidence, or a finding, showing that shipment under common-law liability was denied, we need not decide. But see, *Cleveland, etc., R. Co.* v. *Hollowell* (1909), 172 Ind. 466, 470, 471, 88 N. E. 680.

Congress has by the Interstate Commerce Act covered the entire field of rates, and rate making, as to interstate commerce, and superseded state legislation on that 8. subject, hence no others can be prescribed by, or controlled by the states, nor can contracts with respect to such rates be the subject of state legislation, but there may be limited liability contracts under the 9. Federal Acts. The question has recently, January 6, 1913, received elaborate investigation by the Supreme Court of the United States in the case of *Adams Express Co.* v. *Croninger* (1913), 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, in which the cases are reviewed, and the right to make limited liability contracts in particulars which are here involved, viz., value, injuries to animals done by

each other, and a reasonable relation of the responsibility, and care required as to the particular subject, as to its character or value, and the charge for carriage, upheld. Also see, *Kansas City, etc., R. Co.* v. *Carl, supra; Missouri, etc., R. Co.* v. *Harriman* (1913), 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; *St. Louis, etc., R. Co.* v. *Edwards* (1913), 227 U. S. 265, 33 Sup. Ct. 262, 57 L. Ed. 506; *Wells, Fargo & Co.* v. *Neiman-Marcus Co.* (1913), 227 U. S. 469, 33 Sup. Ct. 267, 57 L. Ed. 600; *Chicago, etc., R. Co.* v. *Latta* (1913), 226 U. S. 519, 33 Sup. Ct. 155, 57 L. Ed. 328; *Chicago, etc., R. Co.* v. *Miller* (1913), 226 U. S. 513, 33 Sup. Ct. 155, 57 L. Ed. 323; *Chicago, etc., R. Co.* v. *Hardwick* (1913), 226 U. S. 426, 33 Sup. Ct. 174, 57 L. Ed. 284; *Yazoo, etc., R. Co.* v. *Greenwood Grocery Co.* (1913), 227 U. S. 1, 33 Sup. Ct. 213, 57 L. Ed. 389; *Hart* v. *Pennsylvania R. Co.* (1884), 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717. It is not improper to suggest here that where the Supreme Court of the United States has declared a rule applicable to any case arising under our interstate commerce laws, state courts are bound by the rule declared, and must follow it. It follows that a contract thus limiting liability should have been admitted in evidence, for if the State act of 1905 (Acts 1905 p. 58) interferes with this right, except under conditions imposed by that act, it cannot be otherwise than a regulation of interstate commerce, where there is an interstate shipment, and is void, because it undertakes to require the carrier to set up by answer a state of facts "showing that the contract counted upon is based upon a sufficient consideration, that it is reasonable, that it was fairly entered into by the shipper after he had been given a *bona fide* and full opportunity to ship at a fair and reasonable rate without limitation of liability." As we have seen, the rates filed and approved by the Interstate Commerce Commission are the only ones which could be applied, and it is alleged that there were two rates, and as appellees were given the lower rate, they

must here be regarded as reasonable, and based upon a sufficient consideration, and as fairly entered into, because the filing and approval of the rates have the force and effect of a law itself; whether the rate for unlimited liability or limited liability was fair and reasonable, can have no application here, for that was foreclosed by the filing and approval of the rates, and the State act could have no application to that clause in any event, except as to the question of information as to rates, and that must be presumed to have been given if requested, for the reason that the Interstate Commerce Act so requires. It has been held in the Federal courts both prior to, and since the enactment of 1910, that it was immaterial after a rate had been established and filed, whether it had been posted as required by the act or not. *Kansas City, etc., R. Co.* v. *Carl, supra; Illinois Cent. R. Co.* v. *Henderson, etc., Co.* (1913), 226 U. S. 441, 33 Sup. Ct. 176, 57 L. Ed. 290; *Texas, etc., R. Co.* v. *Cisco Oil Mill* (1907), 204 U. S. 449, 27 Sup. Ct. 358, 51 L. Ed. 562. The reasoning in the latter case is that the shipper was bound for himself to ascertain the rate, directly in the face of the Indiana statute in effect, and the Interstate Commerce Commission in its annual report, 1908 p. 16, points out the hardship, which resulted in the amendment of 1910, under which information is required to be given in writing of the different rates, or charges applicable to a described shipment, upon written request. §6 Interstate Commerce Acts, as amended in 1910. Hence this section prescribes the course to be pursued in case of an interstate shipment, both by shipper and carrier, totally at variance with the State act, and the latter if valid would require a different method to be pursued. It will be further observed that the information required and that to be furnished, is to be based upon the established rates, thus demonstrating our conclusions as to the rates themselves, so fixed, covering all the requirements of the State act. So that there can be no question as to how much was charged, for in either case the rate

is fixed and so alleged, but the limitation which is set up in the answers which predicate a defense upon the fact of injury by the animals to each other, and the value of the animals, were such as could be legally made, and this being true the contract was admissible in evidence under the general denial, along with the facts to support it, unless the common carrier act of 1905 is valid and applicable, in which event there would be no reversible error in sustaining the demurrers to these answers.

It is claimed by appellee that there is a difference between shipment at an agreed valuation, and a shipment where there is no agreed valuation, but is an agreement as to the liability, in consideration of the reduced rate. We can see no difference in principle, and the question is put at rest by the case of *Kansas City, etc., R. Co.* v. *Carl, supra.*

Reading the Interstate Commerce Act into the contract as we must, it eliminates the question of consideration, its reasonableness, and that it was fairly entered into, under an opportunity to ship without limitation of liability, by the fact that the reasonableness of the rate as fixed and approved and published necessarily includes all those questions, and they are superseded by the Interstate Commerce Act. It therefore becomes unnecessary for us to determine whether the act of 1905 is unconstitutional as being in violation of §22, Art. 4, of the State Constitution, prohibiting the enactment of any special law "regulating the practice in courts of justice," for the reason that it is superseded by the acts of congress as to interstate shipments. The question of the validity and applicability of the common carrier act of 1905, or its being superseded by the Interstate Commerce Act, was not presented in *Pittsburgh, etc., R. Co.* v. *Mitchell* (1911), 175 Ind. 196, 91 N. E. 735, 93 N. E. 996, except as to the one question of there being but one rate. It is also urged that

§§3918, 3919 Burns 1908, *supra,* are void as in violation of the 14th amendment to the Federal Constitution, as denying appellants the equal protection of the laws, in that they are discriminated against, in the matter of practice in the courts. In view of our conclusions as to the State act, it is unnecessary to consider this question.

It is next urged that the separate paragraphs of answer setting up the special contract provisions in regard to appellees assuming all risk of injury from the animals being wild, unruly or weak, or by maiming each other or themselves, were valid, on the ground that a carrier of live stock does not have the same responsibility which attends the carriage of goods owing to the natural propensities of animals, and that where the injuries complained of are as likely to be caused by the animals themselves as by the negligence of the carrier, the court cannot assume without evidence, that the injury is done by negligence. As we hold that

13. the answers were provable under the general denial, sustaining the demurrers was in any event harmless. Neither the evidence nor the findings disclose injury from any of those exceptions. No one, for the owners, was

14. with the property, so that if there was any excuse to be offered, the burden was upon appellants to offer it, the same as any other act which might excuse them. *Pittsburgh, etc., R. Co.* v. *Mitchell, supra.*

Appellant Wabash Railroad Company seeks a reversal because it shows an order from appellee not to feed and water between Lafayette and Huntington. If the

15. lack of feed and water was the sole cause of the injury, it would be right in this contention, but there are other charges of want of care by which the animals were not safely delivered, such as, one animal being down in the car, another with its leg protruding from the car, and another with a foot frozen off. It is impossible for the court, as it would probably have been for the parties, or the court below, to have separated the elements, or amount of separate

damages occurring on the separate lines, from the negligence of either, but in any event the burden was upon them if it could be done. *Chicago, etc., R. Co.* v. *Woodward* (1905), 164 Ind. 360, 72 N. E. 558, 73 N. E. 810; *Elkhart Paper Co.* v. *Fulkerson* (1905), 36 Ind. App. 219, 75 N. E. 283; *Cleveland, etc., R. Co.* v. *Schaefer* (1911), 47 Ind. App. 371, 90 N. E. 502; *Cincinnati, etc., R. Co.* v. *Acrea* (1907), 40 Ind. App. 150, 81 N. E. 213.

It is urged that it is not shown by the evidence or found by the court, that there was a partnership between the railroad companies, and that as the fact of a partnership and joint liability is alleged, appellees must fail on that account. There may be found cases in which as to third persons, traffic agreements have been held to give rise to joint liability, as in case of an initial carrier engaging for a through carriage, in which event the other carriers become its agents. 4 Elliott, Railroads §§1444, 1445. If a partnership could be said to be authorized or allowable among corporations which are common carriers, as to which we express no opinion, it is at once seen that a joint liability for a loss on the line of any of the carriers en route would arise. In the absence of a partnership relation, while all might be sued as joint tort feasors, if any one, or all of them but one, were able to show that the loss did not occur on their lines, they would be discharged, as was the Louisville and Nashville Railroad Company in this case, while if partners all would be liable, irrespective of the actual responsibility. To charge then for a joint liability, arising from partnership, is to charge such nonoffending defendant with a liability which does not exist. It was sought on oral argument to justify the pleading on the ground of charging the defendants as joint tort feasors, but it will be remembered that the initial carrier is not made a party, so as to fix liability upon it, and in turn upon the other carriers en route, so that the attempt is to fix a joint liability by allegations of a partnership between them. The most that can be said is, that it

was an unnecessary allegation so far as the plaintiff was concerned, but was an important matter as between defendants, and there is no evidence or finding to support it.

There is a sharp conflict between the two appealing companies, as to which is responsible for the loss, and it might be a very important matter to a plaintiff as to 16. whether he had a judgment against a solvent, or an insolvent defendant as further illustrating that a complaint should be drafted upon a definite theory. A through carriage was undertaken and negligence charged against all, and it is a familiar rule that if negligence be charged against all, they may be sued jointly or severally, though there be no privity between them. *Chicago, etc., R. Co.* v. *Marshall* (1906), 38 Ind. App. 217, 75 N. E. 973; *Louisville, etc., Lighting Co.* v. *Hynes* (1911), 47 Ind. App. 507, 91 N. E. 962; *Village of Carterville* v. *Cook* (1889), 129 Ill. 152, 22 N. E. 14, 4 L. R. A. 721, 16 Am. St. 248 and note; *Chicago, etc., R. Co.* v. *Northern Line Packet Co.* (1873), 70 Ill. 217; *Illinois Cent. R. Co.* v. *Cowles* (1863), 32 Ill. *116; *Aigen* v. *Boston, etc., Railroad* (1882), 132 Mass. 423; *Barter & Co.* v. *Wheeler* (1869), 49 N. H. 9, 6 Am. Rep. 434; *Conkcy* v. *Milwaukee, etc., R. Co.* (1872), 31 Wis. 619, 11 Am. Rep. 630; *Colegrove* v. *New York, etc., R. Co.* (1859), 20 N. Y. 492, 75 Am. Dec. 418 and note; *Southern Express Co.* v. *Hess* (1875), 53 Ala. 19; *Halliday* v. *St. Louis, etc., R. Co.* (1881), 74 Mo. 159, 41 Am. Rep. 309; *International, etc., R. Co.* v. *Tisdale* (1889), 74 Tex. 8, 11 S. W. 900, 4 L. R. A. 545; *Packard* v. *Taylor, Cleveland & Co.* (1880), 35 Ark. 402, 37 Am. Rep. 37.

Appellants' contention is, that in the absence of a special contract creating an extra-terminal liability, a carrier cannot be held liable for damages not occurring upon its 17. own line. This contention has been ruled adversely to appellants in numerous cases. *Galveston, etc., R. Co.* v. *Wallace* (1912), 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516; *Atlantic, etc., R. Co.* v. *Riverside Mills* (1910), 219

U. S. 186, 31 Sup. Ct. 164; 55 L. Ed. 167, 31 L. R. A. (N. S.) 7; *Pittsburgh, etc., R. Co.* v. *Mitchell, supra; Smeltzer* v. *St. Louis, etc., R. Co.* (1908), 158 Fed. 649; *Interstate Commerce Com.* v. *Louisville, etc., R. Co.* (1902), 118 Fed. 613; *Galveston, etc., R. Co.* v. *Crow* (1909), 117 S. W. (Tex. Civ. App.) 170; *Galveston, etc., R. Co.* v. *F. A. Piper Co.* (1908), 52 Tex. Civ. App. 568, 115 S. W. 107; *United States, ex rel.,* v. *Seaboard R. Co.* (1897), 82 Fed. 563.

We hold that the State act of 1905 was superseded as to interstate shipments, and there was no error in overruling the demurrers to the special answers, for the reason that the contract was admissible under the general denial under the general rule. *Cleveland, etc., R. Co.* v. *Hollowell* (1909), 172 Ind. 466, 88 N. E. 680, and cases there collected. But the judgment must be reversed because of the refusal so to admit it, in addition to the fact of the failure of proof of a partnership. The judgment is reversed, with instructions to the court below to sustain appellants' motions for a new trial, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 101 N. E. 724. See, also, under (1, 2, 3, 4, 5, 7, 9) 6 Cyc. Anno. 492; (6) 16 Cyc. 889; (8) 7 Cyc. 422; (10) 11 Cyc. 752; (11) 7 Cyc. 421; (12) 6 Cyc. 492; (13) 31 Cyc. 358; (14) 6 Cyc. 524; (15) 6 Cyc. 490; (16) 6 Cyc. 478; (17) 6 Cyc. 483, 488. As to regulations of carriers of freight in interstate commerce, see 27 Am. St. 558. As to the burden of proving that loss of, or injury to, live stock in course of transportation is within a carrier's exemption from liability as insurer, see 130 Am. St. 442. As to carrier's liability for negligence of connecting carrier where there has been no special contract, see 106 Am. St. 604. As to the burden of proof of negligence on the part of a carrier of live stock, see 15 Ann. Cas. 35. As to the liability of a carrier of property for loss occurring on connecting line but due to its own negligence, see 19 L. R. A. (N. S.) 1012. On the question of the liability of connecting carrier for loss beyond its own line, generally, see 31 L. R. A. (N. S.) 1.