# Louisville & Nashville Railroad Co. v. Higdon, et al.

(Decided June 21, 1912.)

## Appeal from Henderson Circuit Court.

1. Railroads—Rates—Discrimination.—Where a railroad fixes its own rate for a certain service, it will not be heard to say that the rate is a proper one for certain shippers, and below the cost of the service and therefore confiscatory, as to others who are similarly situated and entitled to the same service.

2. Commerce—Interstate—Burden on—Intrastate Shipments—State Constitution and Laws.—To require a carrier to obey the State Constitution and laws with reference to purely intrastate shipments, does not impose an unreasonable burden upon the interstate commerce business of such carrier.

YEAMAN & YEAMAN, C. H. MOORMAN and B. D. WARFIELD for appellant.

CLAY & CLAY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellee, Joe Higdon, doing business under the name of Crescent Coal Company, was, during the year 1908, engaged in buying and selling coal in the city of Henderson. Appellant, Louisville & Nashville Railroad Company, is a common carrier. Its main line runs into and through the city of Henderson. In addition to its main line, it operates and controls a belt line. Leading from its main and belt lines and running into various industrial plants in the city of Henderson, are several spur tracks which are used for the purpose of transporting freight to and from these industrial plants, and are operated by the railroad as a part of its line of road. During the year 1908, the Keystone Mining & Manufacturing Company was operating a coal mine in the city of Henderson. This mine was connected with the main and belt lines of appellant's road by a spur which appellant operated and controlled. During the month of April, 1908, appellee contracted with the Keystone Mining & Manufacturing Company to furnish and deliver to him on the spur track at its mine 20,000 tons of coal. After making this contract, he contracted with various industrial plants having spur connections with the line of appellant company to deliver to them at their plants in carload lots at a stipulated price, a large quantity of coal. On July 1, 1908, he applied to appellant company to furnish him cars at the Keystone Company's mine for the purpose of loading and hauling the coal to the industrial plants and proposed to pay for the service $4 per car, or at the rate of about ten cents per ton. Appellant refused to furnish any cars for this service until July 13, 1908, when it notified Higdon that it would furnish the cars and perform the service at 50 cents per ton. Appellee refused to accept the service at that price. On August 13, 1908, appellant informed him that it would not furnish cars for this service at any price. Thereupon appellee brought this action against appellant to recover damages alleged to have been sustained by reason of appellant's failure to furnish him the service at the price of $4 per car. The case was transferred to equity, and on final hearing, appellee's petition was dismissed. On appeal to this court, the judgment was reversed, and cause remanded for a new trial consistent with the opinion. Crescent Coal Co. v. L. & N. R. R. Co., 143 Ky., 73.

On that appeal it appeared that appellant, in its

printed and published rates, rules and regulations governing the handling of cars in the city of Henderson, had promulgated the following:

"The Louisville & Nashville Railroad Company does not engage in the business of local switching between switches, tracks, warehouses, or industries in the Henderson. Kentucky, terminals; but where any such service is performed as an accommodation, a charge of $2 a car, plus $2 for car rental, shall be assessed."

It was the contention of the railroad company on that appeal: (1) That appellee's cause of action was not determinable independently of a decision of the railroad commission adverse to the railroad company. (2) That the service demanded of the railroad company was not such a service as the law or public policy required it as a common carrier to perform, nor was it such a service that it engaged in or professed to engage in. (3) That the hauling of grain and milling products between mills, and elevators at Henderson was entirely different from the intra-urban transportation which appellee sought to require the railroad company to engage in. (4) That the railroad company published no tariff rate for intra-urban transportation at Henderson, that the tariff provisions relied on by the plaintiff applied exclusively to switching services, and the service demanded by the plaintiff was a transportation service in that the coal was mined at one point in Henderson station, and was to be transported from that point to another point in the same station. (5) That even if the railroad company did haul grain and milling products at the rate of $4 per car, it was not required by section 215 of the Constitution of Kentucky to haul coal at the same rate.

In holding these contentions of the railroad company without merit, the court, in its former opinion, laid down the following rules:

(1) In the discharge of its duties to the public as a common carrier, a railroad must use for the public convenience all the tracks set apart by it for the transportation of freight, and treat without favor or discrimination all persons offering to it freight for carriage.

(2) A common carrier may hold itself out to the public as being a carrier of certain articles; and if it is only engaged in the carriage of the specified articles, it is not under any obligation to carry other things.

(3) No length of time or manner of treatment or habit of dealing will discharge a common carrier when requested from the obligation to furnish to the public the service it is engaged in performing.

(4) A railroad company may for its convenience in the handling, storing and distribution of its cars and freight, have yard facilities, including switches, spurs and side tracks, and it will not be obliged as a common carrier to transport from one point to another in such yards freight for the convenience of shippers.

(5) A railroad company owes to establishments connected with its line of road by spur tracks the same duty that it does to establishments situated immediately upon its main line of road. It is under the same obligation to furnish facilities for the transportation to one as it is to the other. It must serve all alike.

(6) A railroad cannot arbitrarily and without any relation to the use to which it is put, designate a part of its track or system as yards or switching limits, and assert that it owes no duty as a carrier in this district except such as it may choose to assume. It cannot classify or divide its trackage into parts and say that on one part it is a carrier and on another it is not.

(7) When a carrier publishes a rate it will charge for a certain service, it must furnish to all persons demanding this service the same rate.

(8) If a carrier has no established rate that covers the service requested, it must fix a reasonable rate for such service.

(9) A carrier has a right to classify freight, and make a reasonable difference in its charges for different kinds of freight.

(10) A person sustaining loss by the failure of a carrier to transport freight tendered to it at its stipulated rate may recover any amount lost to him on account of contracts made on the faith of this rate.

In remanding the case, the court held that on the contract made in April appellee was entitled to recover the difference between what it cost him to fill the contracts he had made, whether before or after July 1, 1908, with industries having separate connections, and that he could have filled with coal from the Keystone mine between July 1, 1908, and July 1, 1909, and what it would have cost him to fill these contracts if he had obtained the coal from this mine. The court further held that

as it appeared that the Keystone mine had ceased operations before July 1, 1909, the damages should be confined to the quantity of coal that the Keystone mine could have supplied under the contract before it ceased operations, and that appellee could have furnished in fulfillment of the contracts made with customers before that time.

On the return of the case, the railroad company offered an amended answer and a second amended answer. The trial court refused to permit these pleadings to be filed, but made them a part of the record by order of the court.

The second trial resulted in a verdict and judgment in favor of appellee for the sum of $3,137.10, and the railroad company appeals.

Appellant insists that the first and second amended answers tendered on the return of the case presented a defense to the action, and the trial court erred in refusing to permit them to be filed.

By the first amended answer, appellant simply elaborated certain averments in the second paragraph of its original answer to the effect that it was not its duty to engage in the business of transporting freight or passengers between points in the same terminal or station. In addition to these averments, the first amended answer contained allegations to the effect that the rate of $4 a car was not adequate compensation for the service demanded by appellee, and that to compel appellant to perform the service at that rate would be to deprive it of its property without due process of law and to deny it the equal protection of the laws contrary to the 14th amendment of the Constitution of the United States.

By the second amended answer, appellant pleaded that to require the performance of the service demanded by the appellee at Henderson, would impose an unjust and unreasonable burden upon the interstate commerce business of the defendant, in violation of subsection 3, section 8, article 1 of the Constitution of the United States.

As the averments contained in the first part of the first amended answer are simply an elaboration of the defense presented by the second paragraph of the original answer, and as the court on the former appeal, in an opinion which is now the law of the case, held that they did not present a defense to the action, the further con-

sideration of the first part of the first amended answer will be unnecessary. As to the contention that the rate of $4 a car is below the cost of service and, therefore, confiscatory, and constitutes the taking of property without due process of law, it must be borne in mind that the rate was not fixed by the railroad commission, but was fixed by appellant itself. The railroad company may not fix its own rates, and then complain of the fact that they are confiscatory. In our former opinion, we simply held that as appellant was engaged in furnishing cars for other shippers within the same territory at a rate of $4 a car, it was bound to furnish the same service to appellee at the same rate. This did not impose upon appellant the burden of continuing a rate that was less than the actual cost of the service. It had the right at any time to change the rate, subject to the limitation that the change should affect all shippers alike. It could not establish a certain rate for a certain service and deny to any one similarly situated and entitled to such service the benefit of such rate. Where a railroad company fixes a rate for a certain service, it will not be heard to say that the rate was proper so far as certain shippers were concerned, and confiscatory as to others who are similarly situated and entitled to the same service. To so hold would nullify our constitutional provisions with reference to discrimination. We, therefore, conclude that to hold appellant liable in this case is in no sense to deprive it of its property without due process of law.

Nor does the second amended answer present a defense. The service to which appellee was entitled was wholly within the State of Kentucky. The shipments were intra-state shipments. The interstate commerce business of appellant was in no way involved. Appellant was as much bound to obey the Constitution and the laws of this State with reference to intra-state shipments as it was the acts of Congress with reference to interstate shipments. It could not escape its obligations under either law upon the theory that obedience thereto would impose upon it a burden with respect to the other. It has never been regarded as a burden on interstate commerce to require a carrier to obey the State Constitution with reference to purely intra-state shipments. The contention is certainly novel that to perform a service wholly within the State at a given rate for certain shipments is altogether proper, while the performance of the

same service for another shipper similarly situated imposes an unnecessary and unreasonable burden upon the interstate commerce business of the railroad company.

As neither the amended answer nor the second amended answer presented a defense to the action, it follows that the trial court did not err in refusing to permit them to be filed.

From a careful consideration of the evidence, we conclude that it is amply sufficient to support the finding of the jury.

The instructions being in conformity with out former opinion, and there appearing no error in the record prejudicial to the substantial rights of the appellant, it follows that the judgment should be affirmed, and it is so ordered.