# Andrews Steel Company v. Davis, Director General of Railroads.

## (Decided October 9, 1925.)

## Appeal from Campbell Circuit Court.

1. Carriers—"Transportation Service" and "Switching or Transfer Service" Defined.—"Transportation service" is one which requires no other service to complete shipper's object, while "switching or transfer service" is one which precedes or follows transportation service, regardless of whether or not it involves use of portion of carrier's main line or that of another.

2. Carriers—Movement of Cars Held "Transportation Service," and Carrier Not Entitled to Car Rental in Addition to Published Rate for such Service.—Carrier's movement of loaded cars, containing freight shipments between two companies located about a mile apart, in yard limits, held a "transportation service," and not a switching service, and carrier not entitled to recover car rental charge for such service in excess of published rate .denominated a "switching charge."

3. Carriers—Carrier Cannot Make Additional Charge for Necessary. Element of Transportation Service.—Though carrier may make separate and additional charge for service (that is, accessorial to transportation service), it may not make such charge for one of necessary elements of that service.

4. Carriers—Statute Held Not to Legalize Charge for Service in Addition to Charge for Transportation Service.—Ky. Stats., section 816, declaring carrier charging more than just rate for various services therein designated shall be guilty of extortion, held not to legalize charge for services therein enumerated in addition to regular charge for transportation service.

5. Carriers—Publication of Car Rental Charge in Addition to Charge for Transportation Service Held Not to Legalize it.—Published tariff is binding only if published as law requires, and publication of car rental charge to be made in addition to charge for transportation service held not to legalize it.

J. V. NORMAN, FRANK V. BENTON, C. W. YUNGBLUT and L. W. SCOTT for appellant.

J. C. WRIGHT, MATT HEROLD and WOODWARD, WARFIELD & DAWSON for appellee.

Opinion of the Court by Judge Dietzman—Reversing.

The Andrews Steel Company and the Newport Rolling Mill Company are located about a mile apart in the yard limits of the Louisville & Nashville Railroad Company in or near Newport, Kentucky. For a number of years these two companies have been shipping freight to each other by having the L. & N., and during the time it was under federal control, the Director General, switch loaded cars from the consignor's spur track over a short distance of main line to the consignee's spur track. The record satisfactorily shows that the cars used for such movements from 1907 on, and through the period covered by these suits, were those which had been theretofore delivered to the sending company loaded with freight consigned to such company from some third party, and which on being unloaded were used in the movements above described. From 1907 to December 2, 1912, the rate charged by the L. & N. for the service rendered in taking cars from one plant to the other was designated in the tariff schedules "switching charge," and amounted to $2.00 per car. On December 2, 1912, there was added to the foregoing tariff the following:

"When equipment is furnished by the L. & N. R. R. a car rental of $3.00 per car in addition to the other charges will be assessed."

It seems to be conceded that the L. & N., the rolling mill and the steel company all interpreted this addition to mean that, when cars were ordered from the railroad and furnished by it for the movement in question, the car rental of $3.00 per car was to be charged, but, where the shipper used cars which had theretofore been delivered to his plant with freight, unloaded and then used in the movement this provision in the schedule was not applicable. So the steel company and the rolling mill continued to pay the "switching charge" of $2.00 per car and no more. However, in order to avoid any controversy over possible ambiguities in its tariff, the carrier, on February 2, 1914, changed the memoranda added to its tariff schedule in 1912 so as to read as follows:

"When empty equipment is ordered from and furnished by the L. & N. R. R. for the particular movement covered by this item a car rental charge

of $3.00 per car in addition to other charges will be assessed.''

As the schedule as thus amended was in accordance with the understanding of the steel mill, the rolling mill and carrier, it in no particular changed the situation so far as the amount of charges the industries had to pay was concerned. On May 26, 1917, the foregoing language of the memoranda in the published tariffs was dropped and from that time on these tariffs read:

"SWITCHING CHARGES.

| Point | On | From     To |
|-------|-----|--------|
| Item 125 | | Between |
| Covington, Ky. | General merchan- | Newport   Rolling |
| Newport, Ky. | dise (except coal | Mills   (Newport, |
| Wilders, Ky. | and coke.) | Ky.) and Andrews |
| Andrews, Ky. | | Steel Co.'s track |
| | | (Andrews, Ky.) |
| | | Charge |

$2.00 per car switching
$3.00 per car rental
_____
$5.00  Total.''

A supplement to this tariff, effective October 12, 1917, made no change in the foregoing beyond dropping the words "general merchandise except coal and coke," and substituting therefor "all freight." The schedule as thus amended was carried into a revised schedule effective January 20, 1918, and these are the respective schedules governing the matters here in dispute.

It is alleged in the petition that the carrier at no time involved in this controversy "made, established, published or had any rate, nor had it charged any freight or collected any money for the carrying of anything in any of the cars" the movement of which was covered by the schedules above noted. But in this connection, the parties to this action stipulated that the copies of these schedules found in the record were the "rates of" the carrier on file with the Kentucky Railroad Commission "covering the *transportation* of freight between the Newport Rolling Mills, at Newport, Ky., and the Andrews Steel Company's tracks at Andrews, Ky., during that period." We believe the interpretation thus put by the carrier on its own schedule is correct and fully borne out by it. As printed, the charge purports to be on general

merchandise which is shipped between the points named, and this is in accordance with the obvious common sense of the matter. In June, 1918, the tariff was again revised. In the revision, the items of "$2.00 per car switching; $3.00 per car rental" were eliminated and in their place appeared the single item of "$6.50 per car switching." From May, 1917, to June, 1918, the steel company and the rolling mill shipped to each other numerous cars of freight in the manner above described. On these they paid the L. & N. or the Director General the charge of $2.00 per car switching" but declined to pay the charge of "$3.00 per car rental," whereupon the L. & N. and the Director General each brought a suit against the steel company and the rolling mill respectively for the "$3.00 per car rental" charge on the cars switched for these companies by them during the respective times each had control of the railroad during the period in question. The lower court awarded the L. & N. and the Director General the relief they sought in these four suits. From such judgment in this suit, this appeal is prosecuted.

Appellant insists on this appeal that the published charge of "$2.00 per car switching" is a "transportation rate" and that it is not lawful for a carrier to add to a "transportation rate" a separate and special charge for one of the necessary elements of such transportation. The appellee contends that the rate of $5.00 per car was a total and lawful rate for the movement involved, binding on the carrier and the shipper alike.

The first question to be disposed of is whether the service here performed by the carrier was a switching service or a transportation service. As pointed out in Dixon v. Central of Georgia R. Co., 110 Ga. 173, the test of distinction between transportation service and switching or transferring service is not whether the movement of the cars involves the use of a portion of the company's main line or that of another. Transportation service may exist, although the movement is only over one or more spur tracks of the same company. Switching or transfer service is one which precedes or follows a transportation service. Transportation service is one which essentially requires no other service to complete the object of the shipper. This same idea underlies the cases of Vicksburg S. & P. R. Co. v. R. R. Commission, 69 Southern 161 (La.); Sparta Gas & Electric Co. v. Illinois Southern R. Co., 247 Ill. 346; Grand Trunk R. Co. v. Michigan R. Co., 198 Fed. 1009, affirmed in 231 U. S. 457,

and J. B. Doppes Sons Lumber Co. v. C., N. O. & T. P. R. Co., 92 Ohio State 206, 110 N. E. 640. The distinction then seems to rest on whether or not the particular movement is antecedent or subsequent to an admittedly transportation service. If it is, it is a switching service. On the other hand, if the movement itself is a complete movement, although it is only from one point in the same terminal to another, it is regarded as a transportation service. We therefore conclude that the service in question in these cases involved "transportation service" and not "switching service."

Until the schedule of May 26, 1917, was filed there can be no doubt whatever from this record that the charge of "$2.00 per car switching" was the only charge intended to be charged by the carrier for the transportation service here involved. During all of the years from 1907 to 1917, the carrier did not undertake to collect and does not now undertake to collect from either the steel mill or the rolling mill for the service it rendered anything more than the $2.00 per car. Thus it is clear that the item of "$2.00 per car switching" in the tariffs antedating May, 1917, was meant to be the complete and full transportation charge for the service rendered. This item, unchanged in wording, was carried into the schedule of May 26, 1917. Necessarily the meaning it had acquired went with it. The schedule of May, 1917, did not undertake to alter it in the least but simply attempted to add to such charge an additional one of "$3.00 per car rental." Even the "total" was not designated as "a total rate." The schedule was arranged like an elementary problem in addition with the "transportation service" item on top, the "car rental" item underneath, and then below the two, their sum followed by the word "total" alone, which word added nothing new or interesting to the sum already indicated. It is therefore obvious that the carrier attempted in this schedule of May, 1917, to add to the rate for "transportation service" an item for car rental. The question is then presented whether or not the carrier can lawfully do this.

It seems to be well settled that although a carrier may lawfully make a separate and additional charge for a service that is accessorial to transportation service, it may not make such charge for one of the necessary elements of the transportation service. Illustrative of lawful special charges is the right of the carrier to charge for icing refrigerator cars in addition to the transporta-

tion rate.   See Arlington Heights Fruit Exchange v. Southern Pacific Co., 20 I. C. C. 106.   On the other hand, the carrier may not make a charge in addition to the transportation rate for the use of insulated cars used in the transportation of fruit.   Perishable Freight Investigation, 56 I. C. C. 449; J. C. Famechon Co. v. Hines, 187 N. W. 974 (Minn.).

In the case of Covington Stockyards Co. v. Keith, 139 U. S. 128, the Supreme Court held that a carrier of live stock has no right to charge in addition to the customary and legitimate charges for transportation, for the receiving or delivering of such stock in and through stockyards provided by itself, in order that it might properly receive, load or unload and deliver such stock.   In considering the general principles back of the refusal to allow a carrier to make a special charge in addition to the transportation rate for one of the necessary elements of transportation, the Interstate Commerce Commission in the case of Associated Jobbers of Los Angeles v. Atchison, Topeka & Santa Fe Ry. Co., 18 I. C. C. 310, said:

"The American railroad rate has always been recognized as covering the full service which the carrier gives—in furnishing the car a proper place at which to load it, the conveyance of that loaded car and its terminal delivery.   The various services may be broken up into their component parts and a charge imposed for each, as is the case in England, where by law the government has fixed a schedule of maximum rates for 'conveyance' between stations and a separate schedule of maximum terminals, so-called, which includes a fixed charge uniform throughout the country for a 'station terminal' at each end of the haul, if the station is used, but not otherwise. . . . .   This method of stating rates has never obtained in this country, at least so far as the records of this commission show.   The rate, which it is required shall be published, is a complete rate, which includes not only the charge for hauling, but the charge for the use of the terminals at both ends of the line."

Although the Supreme Court neither approved nor disapproved this language when this case came before it in 234 U. S. 294, yet coming from such high authority and supported by such cogent reasoning, it is highly persuasive.

The principles laid down in the foregoing cases seem conclusive of the point here in issue. That they are, was expressly so held in the case, very similar to the present one, of East Side Packing Co. v. Vandalia R. Co., 258 Ill. 397. In that case, the carrier attempted to collect a car rental charge under the following provisions of its tariffs:

"Rule 2—Car Rental—A charge of two dollars per car (car rental) will be assessed in addition to the regular switching rate on cars furnished by the Vandalia Railroad for movement in switching service between industries on its lines or to industries or deliveries on other lines."

The court held this "car rental charge" illegal, and said that if the carrier could charge for such element of transportation in addition to the charge for transportation service, "it could also charge for the use of its engine, the use of its tracks, the use of its cars, the amount of coal consumed and the wages of the engineer, fireman and switchman. . . . The public interest demands that there should be a single charge for such a service." The appellee in this case seeks to distinguish this Vandalia case on the ground that it went off on the statutory definition of "transportation" found in the Illinois statute. However, as the Illinois court pointed out, the definition given by the Illinois statutes to "transportation" as including "cars and other vehicles and all instrumentalities and facilities of shipment or carriage" is, after all, the universally accepted meaning of the term. Further, as shown above, the service involved in the present case was "transportation" service. Therefore, we see no essential distinction between this case and the Vandalia case.

The case of Crescent Coal Co. v. L. & N. R. Co., 143 Ky. 73, 135 S. W. 768, reported on its second appeal as L. & N. v. Higdon, 149 Ky. 321, 148 S. W. 26, affirmed in 234 U. S. 592, relied on by appellee, is not in point. It is true that the charges there were itemized as here, but no question was made by the shipper in that case as to the lawfulness of such charges. On the contrary, he was willing and anxious to pay the total sum, but the carrier wanted a higher rate, and the only question involved in that case was whether or not the carrier had to move the freight at the rate published in its schedule or could charge a higher rate. Appellee also relies on the Doppes

Sons Lumber Company case, *supra*. In that case the lumber company brought its action under sections 8998 and 9000 of the General Code of Ohio fixing the maximum rates for switching service. Although the charges of the carriers involved were itemized somewhat after the fashion in the case before us, no contention was made by the shipper as to the right of the carrier to so itemize its charges. The sole question was whether the carrier had exceeded in its charges the maximum provided by the statutes for switching service. So the storm center in that case was whether or not the service performed was a switching service or a transportation service. The court held that it was a transportation service, and, being such, it was immaterial to the shipper how the carriers involved in such service divided the charge among them, and that whether or not it was reasonable was not before the court, as the shipper did not base his claim upon an excessive freight rate. As the shipper did not question the right of the carrier to split its charges into items as it did, the court did not notice it in its opinion.

Appellee further relies on section 816 of the statutes. That section merely declares that if the carrier shall charge or collect more that a just or reasonable rate of toll or compensation for the various services therein designated, it shall be guilty of extortion. Of course this means that if the carrier shall receive more than a just or reasonable rate of toll or compensation for such service as it had the right to charge such toll for, it shall be guilty of the offense denounced. It does not make legal the charging of a toll for the services therein enumerated, but only renders illegal extortionate toll for such services when the carrier has the lawful right to charge for them.

Lastly, the appellee contends that as the schedule here involved was a published tariff it is binding on the parties. A published tariff can be binding on the parties only if the tariff is published as the law requires. As said by the Interstate Commerce Commission in the Los Angeles switching case, *supra*:

"The rate which it is required shall be published is a complete rate."

We have seen that the charge of "$2.00 per car switching" was a complete rate for the transportation service rendered. Hence this was the rate which could lawfully be published, and any attempt to add to such

complete rate a special charge which the carrier had no lawful right to make was an attempt to publish something which the law did not authorize. There is nothing sacrosanct about a charge even though published, and publication, where not authorized, can give it no validity where it is invalid.

Being of opinion, therefore, that the rate herein involved of ''$2.00 per car switching'' was a transportation charge and was the full charge intended for such transportation service, we must hold that the appellee was not authorized to add to it a further charge for one of the necessary and essential elements of such transportation. It, therefore, follows that the lower court should have dismissed appellee's petition. and for its failure so to do, this case must be reversed.