## Louisville Water Co. v. Louisville, H. & St. L. Railway Co.

(Decided June 25, 1937.)

(As Modified on Denial of Rehearing Dec. 17, 1937.)

THOMAS C. MAPOTHER for appellant.

WOODWARD, DAWSON & HOBSON, ASHBY M. WARREN, W. L. GRUBBS and A. SHELBY WINSTEAD for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

The Louisville Water Company, hereinafter called the Water Company, is appealing from a judgment of the Jefferson circuit court, dismissing its petition in an action wherein it sought to recover of the Louisville, Henderson & St. Louis Railway Company, hereinafter called the L. H. & St. L., $3,754.70, which it is alleged the latter illegally charged and exacted as excess freight charges.

Briefly stated, the facts are that the Water Company has during all the time involved in this action had a filtration plant at Crescent Hill in Louisville, a short distance from the Crescent Hill Station of the Louisville & Cincinnati line of the Louisville & Nashville Railway Company, hereinafter called the L. & N. The filtration plant of the Water Company is reached by its private side track which leads off of the main line of the L. & N. between Louisville and Cincinnati. From August 12, 1920, to and including March 28, 1929, appellant purchased from various mines in western Kentucky 849 loads of coal which were transported by appellee from the mines to Louisville. Having no terminal or switching facilities at Crescent Hill, the cars were delivered by appellee to the L. & N., a connecting carrier, and by it the cars were placed on appellant's side track at its filtration plant. The shipments moved under uniform bills of lading and rates contained in published tariffs of appellee which were filed with the Interstate Commerce Commission. Under the published tariffs, appellee agreed to absorb legal switching charges made by connecting carriers. In addition to the published rate from the mines to Louisville, appellee added and collected from appellant on each carload of coal, a charge made by the L. & N. for moving the car from appellee's terminal to the side track at appellant's filtration plant. These charges varied from $3 to $6.50 during different periods of the time covered by all the shipments. The L .& N. published its switching rates at Louisville in its terminal tariffs which were filed with the Interstate Commerce Commission. These tariffs contained the switching charges to various switching districts in Louisville and district No. 7 was described therein as "Locations on L. C. & L. division, east of East Louisville station." The published tariffs of the L. & N. Railway Company fixed the rate for transportation of western Kentucky coal from Louisville to Crescent Hill, which rate was changed from time to time. The charges

made by the L. & N. for moving the cars in controversy were at the published rate from Louisville to Crescent Hill which prevailed at the time of the movement. As we understand it, there is no controversy about the facts above stated, but the real controversy is whether appellant's plant is in the L. & N. switching district No. 7 and the switching charges should be absorbed by appellee or whether the charge made by the L. & N. for moving the cars which was at its published rate from Louisville to Crescent Hill was a transportation charge and not to be absorbed by appellee. However, in addition to this issue, appellee interposed a plea of limitation which was controverted by reply.

The switching charges to district No. 7 were considerably lower than the transportation rate made by the L. & N. to its Crescent Hill station. It appears in evidence that the sums collected from appellant by appellee for the L. & N. were designated as switching charges on the freight bills and the cars were moved from appellee's Louisville terminal to appellant's side tracks by switch engines and switching crews of the L. & N. There is evidence for appellee that the switch engines were used because of a sharp curve in the sidetrack which could not be safely negotiated by the larger locomotives used to pull regular trains. There is also evidence for appellee that the L. & N. never treated or considered appellant's plants as being within the switching district 7, but had attempted to define the eastern boundary of that district by a "yard limit" sign some distance west of the plant. It further appears in evidence that the switching tariffs of the L. & N. list the names of industries located within the switching limits in Louisville and give their location and at no time has appellant or its plant been included in this list and no industry is included in this list which is located east of the yard board which it is claimed by appellee defined the eastern boundary of switching district No. 7. This list is headed "List of Industries Located on the Tracks of the Louisville & Nashville Railroad Company within the Louisville Kentucky Switching Limits." However, it was further provided in the switching tariffs that switching charges contained therein applied to and from all industries having private sidings on the L. & N. Railway tracks located in any of the Louisville switching districts and appellant claims that the latter provision brings it within the list. Unquestionably appel-

lant's plant is located in Crescent Hill. In fact it is alleged in the petition that the plant is in Crescent Hill on the tracks of the L. & N. Apparently, the parties as well as the L. & N. treated the movement of the cars from appellee's Louisville terminal to Crescent Hill as a line haul or transportation and not as switching, since over a period of more than eight years, the L. & N. tariff rate to Crescent Hill was charged and was paid by appellant without objection or protest, although it had access to the tariff and the facts on which it now relies for recovery. It is true that acquiescence or continued habit or course of conduct would not operate to relieve appellee from its obligation to furnish service at the applicable tariff rates. Louisville & N. R. Co. v. Higdon, 149 Ky. 321, 148 S. W. 26.

Discussion by counsel for respective parties in original response, reply, and supplemental briefs has taken a rather wide range. Counsel for appellant in one of its reply briefs, after referring to argument by counsel for appellee that the water plant is east of switching district No. 7, said:

"And appellant concedes that if it was not in that district it is not entitled to these absorptions. Stripped of all chaff the case then turns on the simple issue as to whether it was in that district as defined by the tariff in effect at the time involved 'Locations on L. C. and L. division, east of east Louisville station.' "

"The simple issue" referred to in the quoted excerpt from the reply brief therefore involves an interpretation of tariffs, and in this task the same rules apply as do in the interpretation of other contracts or instruments, that is, treat and consider all their provisions and conditions together in an effort to ascertain their meaning and to determine the applicable rate. The same question was before the Interstate Commerce Commission in Louisville Water Company v. Baltimore & O. R. Co., 172 I. C. C. 176, wherein the commission said:

"The whole question is whether under the facts stated, complainant's plant is within the Louisville & Nashville's switching district at Louisville.

"The tariff of the Louisville & Nashville does not definitely limit the eastern boundary of its switching district in Louisville, and the conclusion

must be that Crescent Hill is included therein. It is incumbent upon carriers clearly to define their switching limits. The erection of a yard board in instances of this kind is not sufficient to limit the application of the tariff unless that limitation is clearly defined in the applicable tariff. If this were otherwise, the switching limit might be susceptible of change overnight with the resulting change of the tariff rates on less than statutory notice."

The same question was also before the federal court for the Western District of Kentucky in Louisville Water Company v. Illinois Central Railroad Company (D. C.) 14 F. Supp. 301, 304. After reciting the facts similar in all material respects to the facts in this case, Judge Hamilton said in part:

"In construing applicable railroad tariffs, the whole must be considered, and, where more than two may be applicable to the same transportation service, they must be considered together and conflicts avoided wherever possible; it being presumed that the carrier and regulatory commissions did not intend to confuse that which should be plain. Pillsbury Flour Mills Company v. Great Northern Railway Company (C. C. A.) 25 F (2d) 66. If it should develop that two published charges are equally applicable to the same shipment, the lowest will be applied. Western Grain Company v. St. Louis-San Francisco Railway Company (C. C. A.) 56 F. (2d) 160. Also, if one tariff designation is clearly applicable and another of doubtful applicability, the more specific will be followed. In the case of the United States v. Gulf Refining Company, 268 U. S. 542, 45 S. Ct. 597, 599, 69 L. Ed. 1082, the Supreme Court said: 'Where a commodity shipped is included in more than one tariff designation, that which is more specific will be held applicable. U. S. Industrial Alcohol Company v. Director General, 68 I. C. C. 389, 392; Augusta Veneer Company v. Southern Railway Company, 41 I. C. C. 414, 416. And where two descriptions and tariffs are equally appropriate, the shipper is entitled to have applied the one specifying the lower rates. Ohio Foundry Company v. Pittsburg, C. C. & St. L. Railway Company, 19 I. C. C. 65, 67; United Verde Copper Company v. Pennsylvania Company, 48 I. C. C. 663.'

"And thus we come to the thread. In the case at bar, the designated switching tariff is of doubtful application. The line haul clearly applies, and, following the announced rule of the Supreme Court, supra, the applicable charge here involved was for transportation and not switching.

"The defendant relies on two additional defenses, prior adjudication by the Railroad Commission of the commonwealth of Kentucky of the same subject-matter, and claimed statutory limitation of two years. Each of these defenses is veiled in doubt, and, in view of the conclusion here reached, it is unnecessary to consider them.

"The plaintiff's petition will be dismissed."

The L. & N. published tariff rate to Crescent Hill is definite, certain, and specific, but the area covered by switching district No. 7 as referred to in the switching tariff is uncertain in that the eastern boundary thereof is not definitely fixed.

In Terminal Regulations at Louisville Kentucky, 191 I. C. C. 724, 725, the commission said:

"For many years, and until the Louisville Water Co. Case arose, the filtration plant was understood to be outside the limits of district 7. The 'yard board' was accepted as marking the eastern boundary of that district. Charges upon both interstate and intrastate shipments were assessed in accordance with that understanding, apparently without question or objection by the water company or other interest at Crescent Hill."

Although, as hereinbefore indicated, acquiescence or long-continued habit or course of conduct by the parties would not have the effect of abrograting tariff rates, the switching tariff being of doubtful application and the rate charged being specific, the conduct of the parties and the interpretation they placed upon the tariff of the L. & N. take on significance and have a persuasive influence in determining and giving effect to the intention and meaning of the provisions thereof.

It is our conclusion that the judgment of the federal court in Louisville Water Company v. Illinois Central Railroad Company, supra, is sound and should be followed. The lower court did not go into the merits of the case, but dismissed the petition on the theory that

the cause of action, if any, stated therein, was barred by limitation. However, it is unnecessary to go into that phase of the case, since for reasons already assigned the judgment may be affirmed, although it was based on other or even erroneous conclusions.

Judgment affirmed.

Whole court sitting.

Perry, Baird, and Clay, **JJ.**, dissent.