THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* THE TALGE MAHOGANY COMPANY.

[No. 22,954.    Filed May 31, 1916.]

1. COURTS.—*State Courts.*—*Interstate Commerce Shipments.*—*Jurisdiction.*—Suits by interstate carriers may be instituted in state courts to recover the difference between the lawful charge for service as shown by published tariffs under the Commerce Act of February 4, 1887, c. 104, 24 Stat. 379, and the amount actually paid for such service.    p. 14.

2. CARRIERS.—*Freight.*—*Construction of Tariffs.*—A shipment of logs, which were wired and staked on cars, was embraced in the class set forth in a freight tariff fixing charges for wiring and staking on cars "lumber, telegraph poles or similar lading."    p. 14.

3. CARRIERS.—*Construction of Tariffs.*—*Ejusdem Generis.*—The doctrine of *ejusdem generis* is not applicable in the construction of

a freight tariff fixing charges for certain services rendered in connection with the shipping of "lumber, telegraph poles or similar lading." p. 14.

4. CARRIERS.—*Freight.—Establishment of Rate.—Effect.*—An interstate tariff charge, duly published and filed with the Interstate Commerce Commission stands as the lawful charge until abrogated by the commission. p. 14.

From the Marion Superior Court (90,019); *Charles J. Orbison*, Judge.

Action by The Cleveland, Cincinnati, Chicago and St. Louis Railway Company against the Talge Mahogany Company. From a judgment for defendant, the plaintiff appeals. (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Reversed.*

*Frank L. Littleton* and *Charles P. Stewart*, for appellant.

*Wilson S. Doan* and *James G. Mathews*, for appellee.

MORRIS, J.—Action by appellant to recover an alleged railroad tariff charge of $82. The cause was submitted to a jury for trial, and at the close of the evidence the court instructed the jury to find for appellee, and this charge constitutes the alleged error on which appellant relies. Appellee purchased forty-one carloads of mahogany logs in western Africa, and shipped them to Weehawken, New Jersey, whence they were transported over the interstate railroads of the Erie company and that of appellant to Indianapolis, Indiana, where they were delivered to appellee. These logs were hewn square and were loaded on gondola cars in such way as to extend above the tops thereof. To secure them in place, the Erie company staked and wired them when loaded at Weehawken and furnished the materials therefor. The logs were from twenty-two to forty-five inches square at the

MAY TERM, 1916.                13

Cleveland, etc., R. Co. *v.* Talge Mahogany Co.—185 Ind. 11.

ends, and from seventeen to twenty-two feet in length. Their average weight was two tons, but some of them weighed more than four tons. At the time of shipment the Erie company had on file with the Interstate Commerce Commission the following circular, which remained in effect:

"General Freight Office, New York, N. Y.,
August 1, 1904.    Supplement No. 16
To
Circular No. E. R. 1059, I. C. C. No. 3607.
Revised Lighterage and terminal regulations in New York Harbor and vicinity.    Taking effect August 1, 1904.
Addition.
Expense of bracing shipments of lumber, etc. Rule 37.    The expense for staking, wiring or cleating shipments of lumber, telegraph poles or similar lading destined to Trunk Line and western points will be made a charge upon the lading as follows:
When the material and labor are furnished
by the railroad company......$2.00 per car.
When the material is furnished by the shipper,
and the labor by the railroad company...
...........................$0.50 per car.
R. M. Parker,
General Freight Agent, New York."

The Erie Railroad Company billed out the logs with advance charges of $10,991.45, which sum included $82 representing the staking and wiring at $2 per car, under the above tariff, all of which was to be collected from appellee.    The cars arrived at Indianapolis, in November, 1907, when, because of the stress of the financial panic then existing, appellee was unable to secure money from the banks with which to pay transportation charges.    Appellant delivered the logs, however, on an agreement to pay in installments.    All the charges were subsequently paid to appellant except that for the

14        SUPREME COURT OF INDIANA,

Cleveland, etc., R. Co. *v.* Talge Mahogany Co.—185 Ind. 11.

staking and wiring, and appellant paid the Erie company for such service. Appellee refused payment on the theory that the charge for the service was not warranted under said tariff, though it concedes that such charge would be proper under a tariff describing property of this character.

Suits by interstate carriers may be instituted in state courts to recover the difference between the lawful charge for service as shown by published tariffs under the Commerce Act of February 4, 1887 (c. 104, 24 Stat. at L. 379), and the amount actually paid for such service. *Louisville, etc., R. Co.* v. *Maxwell* (1915), 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E 665. We are of the opinion that the logs shipped were embraced in the class set forth in the tariffs, viz., "lumber, telegraph poles or *similar lading.*" The sole object of the service was to prevent accident. The charge bore no relation to the value of the property or to the distance of transportation, and in considering the question involved the purpose of the service must be kept in mind. Appellee invokes the doctrine of *ejusdem generis*, but we are of the opinion that it is not applicable. *U. S. Cement Co.* v. *Cooper* (1909), 172 Ind. 599, 88 N. E. 69. See, also, *Nat., etc., Lumber Dealer's Assn.* v. *Athinson, etc., R. Co.* (1908), 14 Interst. Com. R. 154, 156. No question of the reasonableness of the rate is involved. An interstate tariff charge, duly published and filed with the Interstate Commerce Commission stands as the lawful charge until abrogated by the commission. *Wabash R. Co.* v. *Priddy* (1912), 179 Ind. 483, 101 N. E. 724.

The trial court erred in its peremptory instruction.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 112 N. E. 890. See under (1) Ann. Cas. 1913D 272.