# Benjamin A. Deffler, Appellee, v. Simeon Loudenback, Appellant.

## Gen. No. 28,548.

1. NEGOTIABLE INSTRUMENTS—*signer of note on back as indorser.* One who places his name upon the back of a promissory note before it is delivered is, under Cahill's Ill. Stat., ch. 98, ¶ 83, an indorser.

2. NEGOTIABLE INSTRUMENTS—*discharge of indorser by failure to give notice of dishonor.* Under Cahill's Ill. Stat., ch. 98, ¶ 83, unless the indorser of a promissory note is notified that the note has been dishonored he will be discharged from liability thereon.

3. APPEAL AND ERROR—*waiver of points by failure to argue on appeal.* Points made in a brief but not argued on appeal will, under Rule 19 of this court, be considered waived.

4. NEGOTIABLE INSTRUMENTS—*inapplicability of statutory provision as to notice of dishonor of partnership paper to individual maker.* Cahill's Ill. Stat., ch. 98, ¶ 120, providing that where the parties to a note to be notified are partners, notice to any one partner is notice to the firm, has no application to an individual note made by one partner and indorsed by another, and notice to such indorser is necessary.

5. NEGOTIABLE INSTRUMENTS—*agreement to give new note as waiver of notice of dishonor.* Notice of dishonor of a note was not waived by the fact that defendant indorser agreed to give a new note.

6. TRIAL—*admissibility on retrial of admission in open court.* On a second trial of an action against the indorser of a promissory note the court should have permitted defendant to introduce evidence tending to show that on the former trial it was expressly stipulated that no notice of dishonor had been given to defendant.

7. APPEAL AND ERROR—*unnecessary questions of evidence not considered.* Where an action upon a promissory note must be retried because of the exclusion of evidence the question as to whether there is any basis in the evidence for the verdict against defendant where the verdict was for a sum considerably less than that shown by the evidence to be due, if any liability were shown, will not be passed upon.

Appeal by defendant from the Circuit Court of Cook county; the Hon. E. M. MANGAN, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1923. Reversed and remanded. Opinion filed June 11, 1924. Rehearing denied June 24, 1924.

MAX M. GROSSMAN and SAMUEL GROSSMAN, for appellant.

BANGS & FRANKHAUSER, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff as payee of a promissory note dated March 19, 1914, for $2,500.00 due on or before one year after date with interest until due at 6 per cent and afterwards at 7 per cent made by W. E. Deffler brought an action of assumpsit against the defendant as indorser of the note, claiming that there was a balance due and unpaid of $2,525.64. The case was tried before a judge and a jury and there was a verdict and judgment in plaintiff's favor for $2,000.00, to reverse which the defendant prosecutes this appeal.

Plaintiff filed his declaration which is a printed form of "payee versus guarantor." In two special counts of the declaration, it was alleged that the defendant guaranteed the payment of the note and in plaintiff's affidavit of claim attached to the declaration, it is stated that plaintiff's cause of action was upon the promissory note, payment of which was guaranteed by the defendant.

The record discloses that the defendant for some time prior to the year 1914 was engaged in the real estate business in Chicago; that the maker of the note, William E. Deffler, who was a brother of plaintiff's, desired to buy one-half interest in such real estate business, and to do so he would have to pay $2,500.00; that he had $500.00 of his own money, and in order to raise the other $2,000.00 the brother agreed to loan him this amount for one year provided he be given a note indorsed or guaranteed by the defendant; that in accordance therewith William E. Deffler made out the note in question; the defendant wrote his name on the back of it; the brother thereupon delivered it to plaintiff, received the $2,000.00 from him and then

paid the defendant the $2,500.00 for one-half interest in the business. Thereafter the maker, William E. Deffler, and the defendant conducted a real estate business in Chicago. There is no evidence that the defendant knew that the $2,500.00 was not obtained from the plaintiff; nor is there any satisfactory evidence in the record as to why William E. Deffler gave his brother the plaintiff a note for $2,500.00 when he only obtained $2,000.00 from him. On the back of the note a payment of $500.00 is indorsed as having been received July 3, 1914.

William E. Deffler testified for plaintiff that on the date the note became due, March 19, 1915, his brother, the payee, presented it to him for payment; that he told his brother he did not have the money; that the brother thereupon requested him to go to defendant's office and take the matter of payment up with defendant; that he went to defendant's office and told him that his brother, the payee, was demanding payment; that the witness had commissions coming from the real estate business that could be used in paying the note or at least the interest. The witness further testified that he did not recall what the defendant said, but that the note was not paid, and on the same date the witness paid the annual interest to his brother of $120.00, which was approximately the annual interest on the $2,000.00 remaining unpaid. He also testified that he saw the defendant a number of times in reference to the payment of the note and that the latter stated at one time he would make a new note and take up the old one. On cross-examination he testified that in a former trial of the case, he had testified and upon being asked whether on that trial he gave testimony in reference to the note having been presented to the defendant for payment an objection was interposed and sustained.

The plaintiff testified in his own behalf that when the note became due on the 19th of March, 1915, he had a conversation with his brother, the maker, and

Deffler v. Loudenback, 233 Ill. App. 240.

presented the note to him for payment; that he was unable to pay; that the witness then requested his brother to take the matter up with the defendant; that thereafter the brother paid him $120 interest, but nothing was paid since that time; that he never talked with the defendant himself. The witness thereupon computed the interest on the note to be $1,065.92, making a total which he claimed due of $3,065.92. Afterwards, he was recalled and testified that when the note came due and he demanded payment of his brother, which payment was not made, he requested his brother to go and see Loudenback about the matter; that the brother said he would do so and left. ·

For the defendant, Samuel G. Grossman, a practicing attorney testified that on the first trial of the case he represented the defendant; that he examined and cross-examined the witnesses; that he heard the statement of the counsel in that case for both parties; that he had a transcript of the testimony and the opening statement which he produced, and that it was true and correct, but upon objection the court refused to let the witness testify what occurred on the prior trial as recollected by the witness or shown by the transcript of the proceedings taken at that time. Thereupon counsel for the defendant stated "I offer to show by the witness that on the former trial of this case before Judge Honore, on May 17, 1917, it was admitted by the attorney for plaintiff, that there was no demand for payment, protest and notice to the person who they claim is the guarantor of the note and not entitled to notice and that it was stipulated to that effect by the attorneys in the case." Objection to this offer was sustained. It appears that on the former trial plaintiff was represented by different counsel from those who represented him on the trial of the instant case.

The defendant testified that he did not have any conversation with the maker of the note on March 15, 1915; that he did not receive notice of any kind that

the note had not been paid; that he did not have a conversation with the maker after the note became due to the effect that money coming in for commissions belonging to the maker would be used in payment of the note; that he first learned that the note had not been paid on about September 1, 1917, which was shortly after he sold out a half interest in the business to a Mr. Hughes, who was introduced to the defendant by the maker of the note. This is substantially all the material evidence in the record.

The defendant having placed his name on the back of the note before it was delivered, is an indorser. Sec. 63, Chap. · 98, Cahill's Statutes. And unless he was notified that the note had been dishonored, he would be discharged. Sec. 88, Chap. 98, Cahill's Statutes. Ten points are made in the brief of plaintiff but most of them are not argued, and they are, therefore, considered waived. (Rule 19 of this court.) There is no merit in the contention made by plaintiff that since the defendant and the maker of the note were partners in the real estate business, no notice of dishonor was required. · Sec. 98 of Chapter 98, Cahill's Statutes referred to by counsel in support of this contention has no application. It provides that where the parties to be notified are partners, notice to any one partner is notice to the firm, even though there has been a dissolution, because the note in question here is not a partnership matter. Nor do we think there is any authority for the contention made by plaintiff that notice of dishonor was waived because the defendant agreed to give a new note as testified to by the maker. Moreover, the pleadings of the case are not on theory of waiver, but on the expressed allegation that notice of dishonor had been given.

The main question for decision, however, is whether the court should have permitted the defendant to introduce evidence tending to show that on the former trial of the case it was expressly stipulated that no

notice of dishonor had been given to the defendant. We have given this question careful consideration and upon an examination of the authorities, we are clearly of the opinion that the evidence offered was admissible and the court therefore erred in excluding it. In Vol. 5, Wigmore on Evidence, 2nd Ed., the author states, in speaking of "Judicial Admissions," Sec. 2588: "An express waiver, made in court or preparatory to trial, by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it. This is what is commonly termed a solemn—*i. e.* ceremonial or formal—or *judicial admission*, or *stipulation*. It is, in truth, a substitute for evidence, in that it does away with the need for evidence." And the author continuing says, "that such a solemn admission is conclusive of the fact admitted." In Sec. 2590 he also says, "The vital feature of a judicial admission is universally conceded to be its *conclusiveness* upon the party making it, *i. e.*, the prohibition of any further dispute of the fact by him, and of any use of evidence to disprove or contradict it. In view, however, of the commendable purpose which leads (or ought to lead) to the voluntary making of admissions, it is always and properly said that the trial Court may in discretion relieve from this consequence." And in Sec. 2593 it is stated "Whether a judicial admission continues to have effect for a subsequent part of the same proceedings, including a new trial, has been the subject of some opposition of rulings, although the orthodox English practice plainly answered in the affirmative.   *   *   *   Moreover, the ignorance which may have led to an ill-advised admission is no more a cause for revoking it at the second trial than at the first; and in any event the judge's discretion may grant relief (ante, sec. 2590) in the

one instance as well as the other. It would seem, having regard to the voluntary and contractual nature of the act, that the duration of its effect, no less than its scope, depends, after all, on the intent of the parties; that this implied intent may vary with the circumstances; and that where no special circumstances indicate the contrary, the intention should be implied to extend the effect of the admission to all subsequent parts of substantially the same litigation between the same parties, including a new trial." The author further says that whether such admissions are conclusive on a new trial of the case, they are at least receivable as ordinary admissions. (See note to Sec. 2593.) Other authorities holding that the solemn admissions made during the progress of the trial may be used on a subsequent trial and cannot be retracted unless by leave of court on a proper showing of mistake, imposition of surprise are: 1 Greenleaf on Ev. Sec. 186; 1 Jones on Ev. Sec. 261; *Kircheimer v. Barrett,* 125 Ill. App. 56; *Prestwood v. Watson,* 111 Ala. 604; *Perry v. Simpson Waterproof Mfg. Co.,* 40 Conn. 313; *Central Branch U. P. R. Co. v. Shoup,* 28 Kan. 394; *Gallagher v. McBride,* 66 N. J. L. 360; *Moynahan v. Perkins,* 36 Colo. 481.

Greenleaf in his excellent work on Evidence Sec. 186 says: "The admissions of attorneys of record bind their clients in all matters relating to the progress and trial of the cause. But, to this end, they must be distinct and formal, or such as are termed solemn admissions, made for the express purpose of alleviating the stringency of some rule of practice, or of dispensing with the formal proof of some fact at the trial. In such cases, they are in general conclusive; and may be given in evidence, even upon a new trial." The same author further states in sec. 206 that the court in its discretion, may relieve a party from a judicial admission where it appears that the admission was made by mistake. To the same effect is the rule stated in Jones on Evidence, sec. 261.

Deffler v. Loudenback, 233 Ill. App. 240.

In the *Shoup* case, the opinion was written by Mr. Justice Brewer of the Supreme Court of Kansas who was afterwards an Associate Justice of the Supreme Court of the United States.  It was there held that an oral admission of a fact made by counsel during the progress of a trial binds his client, and that such admission may be used on a subsequent trial unless it appears that the admission was limited to the particular trial.  That if it appears to have been a general admission of the fact, it will be binding upon the client on a subsequent trial of the case; that where it is uncertain what the scope or the intent of the admission was, the question is one for the determination of the jury.  The other authorities which we have cited are to the same purport.

In the instant case the admission having been made in open court during ,the progress of the first trial that no notice of dishonor had been given the defendant, we think this admission was competent to be proved on the second trial, and the court erred in excluding the offered evidence.

Complaint is also made by the defendant that the judgment should be reversed because the evidence discloses that plaintiff was entitled to recover if at all, $3,065.92, while the jury returned a verdict for $2,000.00, and that there is no basis in the evidence to sustain this verdict.  In reply to this contention the plaintiff argues that the defendant is in no position to complain, because the plaintiff did not obtain all he was entitled to.  We will not pass on this question since there must be a new trial for the exclusion of evidence, but we might say that the jury might not be far from the amount, because while the note was for $2,500.00 there had been a payment of $500.00, yet the evidence shows that plaintiff loaned his brother but $2,000.00, so that if from this latter sum there be deducted the payment of $500.00, there would be remaining due on the face of the note but $1,500.00 on which the jury may have computed interest.

The judgment of the circuit court of Cook county is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

TAYLOR, P. J. and THOMSON, J. concur.