## THE J. B. AUSTIN, JR.

## CANADA ATLANTIC GRAIN EXPORT CO., Inc., v. DOWD.

### No. 266.

Circuit Court of Appeals, Second Circuit.
March 7, 1932.

The opinion of Judge Frank J. Coleman of the District Court was as follows:

The libelant was the owner of 11,600 bushels of grain which were loaded upon the barge Daniel G. O'Day at Buffalo for carriage to New York in a tow composed of six other barges and the steam canal boat J. B. Austin, Jr., which was to act as tug for the flotilla and also to carry some 6,200 bushels of grain. Solely through the negligence of the Austin and of her master, William Hollenback, the barge O'Day was caused to sink on May 22, 1928, while in the state barge canal and her cargo sustained the damage for which recovery is now sought from the Austin.

The defense is that an agreement between libelant and Hollenback in regard to insur-

ance prevents recovery as against the Austin. Hollenback was not the owner of the Austin, but held it under a demise charter from the claimant, Anna Dowd. He was, however, the owner of all the other boats in the flotilla, including the O'Day, with the exception that he was only part owner of the barge James W. Brice. He was also the party with whom the libelant made the contract of transportation which covered the cargo of all the boats in the flotilla, including the 6,200 bushels loaded on the Austin.

The contract for transportation was subject to the terms and conditions of the New York Produce Exchange canal grain charter party No. 1, except as to the insurance clauses. Instead of adopting these clauses in the produce exchange form, the libelant agreed with Hollenback to insure the carrier's liability under libelant's open policies with two specified insurance companies. Libelant did effect such insurance under its open policies and charged Hollenback $4.50 for such part of it as applied to the cargo on the barge O'Day, by deducting that amount from the freight for that cargo. Similar amounts were deducted from the freight for the cargoes of the other vessels, including the Austin.

The question presented is whether libelant's obligation to Hollenback to effect carrier's liability insurance covered the loss which occurred. Libelant's obligation was merely to effect insurance under its open policies which were well known to Hollenback or his agent. The question is, therefore, whether the open policies in their carrier's liability clause covered this loss. That clause read as follows:

"It is hereby understood and agreed that if Boat-Owner, Operator and/or Carrier requests the assured in writing to cover Carrier's Liability at time of chartering, the said Legal Liability of the Boat-Owner, Operator, and/or Carrier under the contract of affreightment with the assured shall be insured hereunder at rate as per schedule and subject to the following conditions:

"1. Excluding any and all liability on the part of tugs or other vessels.

"2. Excluding liability of short delivery, unless caused by perils insured against.

"3. The Boat-Owner, Operator and/or Carrier agrees that this insurance shall not attach unless vessel is approved by underwriter's surveyor appointed by the company, prior to loading and certificate issued by surveyor for said voyage.

"4. The Boat-Owner, Operator and/or Carrier warrants and agrees that he will not load vessel to a greater depth than that considered safe by Commissioner of Canals.

"5. Excluding shipments described in Clauses 18 and 19.

"6. The assured warrant to report such risks to this company at the time the insurance on the cargo is declared and any unintentional error or omission in reporting such risks shall not prejudice the assured's rights under this policy."

If the Austin was a "tug" within the meaning of that clause, its liability was excluded from the insurance which the libelant agreed to effect. The Austin was a steamer commonly used for towing other vessels and their cargoes between Buffalo and New York, and it also commonly carried about 6,000 bushels of grain on a trip. None of the other barges in the flotilla in question had any motor power, and the only means of steering the fleet was the steamer Austin. She certainly was acting as a tug with reference to the barges, even though she was acting as carrier in relation to the 6,200 bushels of grain on board of herself. There was in general use a form of tower's liability insurance available to tugs, and on at least one occasion the Austin obtained such insurance. The premium for that form of insurance was figured on an entirely different basis from that of the carrier's liability clause above quoted.

Under all the circumstances it is my opinion that the Austin comes within the clause "tugs or other vessels" whose liability was expressly excluded from the open policies under which libelant was obligated to effect insurance, and that therefore there is no defense to the claim for damage caused by the Austin. While it is undisputed that the libelant is only a nominal party, and that the suit is brought on behalf of the two insurance companies which apparently had paid the amount of the loss to the libelant under other clauses of the above policies, that fact is immaterial. If the libelant has a valid claim to which the insurance companies have been subrogated, it may be enforced in their behalf, since the claim stipulates that no question of the legal capacity of the libelant is raised.

An interlocutory decree is therefore directed in favor of the libelant.

Thomas A. McDonald, of New York City (Franklin M. Depew, of counsel), for appellant.

Otto & Lyon (Henry E. Otto, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

PER CURIAM.

Decree affirmed on opinion below.