## LOUISVILLE WATER CO. v. ILLINOIS CENT. R. CO.

### No. 1583.

District Court, W. D. Kentucky.

April 15, 1936.

Thomas C. Mapother, of Louisville, Ky., for plaintiff.

Trabue, Doolan, Helm & Helm, of Louisville, Ky., for defendant.

HAMILTON, District Judge.

The defendant is a railroad company operating a line of road from the Western Kentucky coal fields to Louisville, Ky. East of its terminals on the line of the Louisville & Nashville Railroad Company the plaintiff has a water filtration plant connecting with that road by switch.

From and including December 29, 1919, to and including October 29, 1930, the plaintiff shipped f. o. b. at point of origin 1,314 cars of coal from Western Kentucky over defendant's lines on bills of lading consigned to "Louisville Water Works, destination Louisville, route Crescent Hill Pumping Plant, L. & N. delivery." The defendant had on file with the Interstate Commerce Commission and the Railroad Commission of the commonwealth of Kentucky, during all the time mentioned, regularly published tariffs wherein it agreed to absorb all switching charges at Louisville, Ky., lawfully on file with the Interstate Commerce Commission on hard coal, soft coal, or coke to all switches, tracks, warehouses, and industries reached by and (or) connecting with the tracks of other connecting and switching railroads, provided such traffic paid the defendant a freight charge other than a switching charge.

The defendant had no switching facilities from its terminal in the city of Louisville to Crescent Hill; the Louisville &

Nashville Railroad Company having the only railroad connections to that point. The latter road had on file with the Interstate Commerce Commission and the Railroad Commission of the commonwealth of Kentucky switching charge tariffs designating territories. One of these, zone 7, was "Locations on the Louisville, Cincinnati, and Lexington Division, East of East Louisville Station." The charge in this zone for shipments received from the defendant by the Louisville & Nashville Railroad Company was $3.60 a car. The plant of the plaintiff was located within the corporate limits of the city of Louisville and east of the East Louisville station of the Louisville & Nashville Railroad Company. Said railroad company, during the times herein mentioned, had also on file with the Interstate Commerce Commission and the Railroad Commission of the commonwealth of Kentucky a line-haul tariff for freight moving from its Louisville station to Crescent Hill. From August 28, 1919, to August 26, 1926, its charge was $5 per car; from the latter date to July 1, 1922, $6.50 per car; and from that time to December 27, 1927, $5.85 per car; and then until October 29, 1930, $3 per car on coal traveling solely over its lines, and on coal received from other roads, $5.85 per car.

From February 7, 1924, to March 3, 1928, the defendant had on file with the Interstate Commerce Commission and the Railroad Commission for the commonwealth of Kentucky a tariff in which it agreed to absorb $2.85 per car of line-haul charges on shipments of carloads of coal forwarded from mines on its lines when delivered to the Louisville & Nashville Railroad Company at Louisville, Ky., and destined to Bear Grass and Water Works, Ky. On March 3, 1928, it amended this tariff by adding thereto the words "Crescent Hill, Kentucky."

From July 11, 1919, to November 13, 1920, the plaintiff voluntarily paid to the defendant, in addition to the line-haul charge from the mines to Louisville, Ky., $5 per car, which was listed on the freight bill as "switching charges"; from November 13, 1920, to September 6, 1922, $6.50 per car; from September 6, 1922, to February 15, 1924, $5.85 per car; from February 15, 1924, to October 29, 1930, $3 per car. All of these charges were at the rates per car as shown on the line-haul tariff of the Louisville & Nashville Railroad Company from Louisville to Crescent Hill, except from the period beginning February 20, 1924, to October 29, 1930, the charge was $2.85 less than the tariff, but the defendant had agreed to absorb this sum on deliveries to that railroad company destined to Bear Grass and Water Works, Ky., and after March 3, 1928, to Crescent Hill, Ky. In making out freight bills, the defendant's employees construed its tariffs to require it to absorb $2.85 of the charge after March 6, 1924. The aggregate sum paid by the plaintiff to the defendant on account of these charges was $4,656.10, which it seeks to recover in this action, claiming the defendant erroneously collected from its switching charges which it had agreed to absorb, and that the shipments were not covered by the line haul of the Louisville & Nashville Railroad Company from its Louisville station to Crescent Hill, but were controlled by that road's switching tariffs.

This railroad company is the principal intercity carrier of Louisville, Ky. It had divided its terminals into ten local switching districts and filed tariffs accordingly. District 7, the one here in question, is situated in the eastern part of the city, and had for many years been defined as "locations on the L. C. & L. division east of East Louisville station." East of the latter station is a city residential area known as Crescent Hill, and included therein is the filtration plant of the defendant, and alongside the latter is a so-called prepay station of the Louisville & Nashville Railroad Company designated on its time tables as "Crescent Hill."

The switching tariffs contain a published list of industries within each switching district by which its limits could be determined, but, in addition to listing, the unqualified provision above quoted is also given.

For many years the filtration plant of the plaintiff was understood to be outside of the limits of district No. 7, and a "yard board" erected by the Louisville & Nashville Railroad Company, with the sign "Yard Limit" thereon, was accepted as the eastern boundary of the District. Charges upon interstate and intrastate shipments were assessed in accordance with that understanding without question or objection by the plaintiff or any other shipper. Interstate line-haul class commodity rates were maintained to and from the Crescent Hill station as well as the East.

Louisville station, subject to alternative application of the combinations on Louisville proper. There was also a public team track opposite the plant of the defendant, and deliveries were made to it by road-haul engines and crews, and to the plaintiff by switch engines and crews because the curvature at the entrance to its siding was too great to safely use road-haul engines because of their long wheel bases.

The plaintiff prosecuted a claim before the Interstate Commerce Commission in Louisville Water Co. v. Baltimore & Ohio Railroad Company, 172 I.C.C. 176, to recover from it line-haul charges paid on commodities moving over its lines into Louisville and delivered to the plaintiff by the Louisville & Nashville Railroad Company, alleging that the charges were for switching which the Baltimore & Ohio had agreed to absorb and the line-haul rates were inapplicable. The Commission found for the water company, and in so doing said:

"Defendant Louisville & Nashville contends that the switching charge of $2.70 per car was not applicable because Crescent Hill was not within its Louisville switching district, that district being confined to its so-called industrial limits and marked by a yard board erected 1.37 miles west of complainant's industry. The whole question is whether under the facts stated, complainant's plant is within the Louisville & Nashville's switching district at Louisville.

"The tariff of the Louisville & Nashville does not definitely limit the eastern boundary of its switching district in Louisville, and the conclusion must be that Crescent Hill is included therein. It is incumbent upon carriers clearly to define their switching limits. The erection of a yard board in instances of this kind is not sufficient to limit the application of the tariff unless that limitation is clearly defined in the applicable tariff. If this were otherwise, the switching limit might be susceptible of change overnight with the resulting change of the tariff rates on less than statutory notice."

After the above decision, the Louisville & Nashville Railroad Company made application to the Interstate Commerce Commission to suspend its schedules defining district No. 7, and to place its eastern limits definitely at a distance west of the plant of the plaintiff. Its application was denied, Terminal Regulations at Louisville,

179. I.C.C. 379. Later, on renewal, this application was approved March 7, 1933.

There is no claim made by the plaintiff that the charges of which it complains were unjust, unreasonable, discriminatory, or prejudicial. The only question for decision is, what is the applicable tariff; that is to say, was it a line-haul or switching charge which it paid?

The plaintiff insists that the service rendered by the Louisville & Nashville Railroad Company, after receiving the cars from the defendant, was in fact a switching service, and the charges are determinable by the tariff schedule for switching. The recovery is sought solely on the interpretation of the applicable tariffs, and it is not so much a question as to what in fact the services were as a proper construction and application of the published rates. Both railroads treated the service as a line haul, and, while on the freight bills the charges were identified as switching, the amount was at the line-haul rate. The plaintiff acquiesced in these charges, and, so far as the record shows, without objection. In fact, one of the witnesses for the defendant stated that the line-haul rate was not established until after conference and agreement with the officials of the plaintiff.

█ There are various interwoven principles of law applicable to this case, and it seems that a thread may be found among them leading to a correct and just conclusion. Ordinarily in rate making a transfer service is distinguished from transportation, and switching service is usually defined as one which precedes or follows transportation on which legal freight charges have already been earned or are to be earned. The test is sometimes applied as to which branch of the service in fact moves the freight; if by a yard crew or yard master, it is said to be a switching charge, but, if the movement is under the direction of the train dispatcher or train master, a transportation charge.

█ The carriers over which lines the cars moved had the right to treat the services rendered after the shipment reached Louisville as "transportation" and not "switching." The fact that the movement was solely within the terminals of the two carriers did not prohibit an applicable tariff for transportation. Doppes · Sons Lumber Company v. Cincinnati, N. O. & T. P. R. Co., 92 Ohio St. 206, 110 N.E.

640, L.R.A.1916D, 452; Dixon v. Central of Georgia R. Co., 110 Ga. 173, 35 S.E. 369; Vicksburg, S. P. & R. Company v. Railroad Commission, 137 La. 747, 69 So. 161; Sparta Gas & Electric Company v. Illinois Southern Railroad Co., 155 Ill. App. 283; Grand Trunk Railroad Company v. Michigan Railroad Commission (D. C.) 198 F. 1009; Crescent Coal Co. v. Louisville & Nashville Railroad Company, 143 Ky. 73, 135 S.W. 768, 33 L.R.A. (N. S.) 442. There was no joint through rate on the shipments here involved. The plaintiff sought to supply this lack by directing the shipment to "Louisville Water Works, destination Louisville, route Crescent Hill Pumping Plant, L. & N. delivery." It intended the shipment to be continuous. The defendant's terminals were within the corporate limits of the city of Louisville, and the plaintiff could have unloaded the coal and trucked it to its plant, but desired to insure continuous transportation from the point of shipment to its unloading track, and caused such designation to be made on the bills of lading which was as effective as if there had been a joint through rate from the point of origin to destination.

In construing applicable railroad tariffs, the whole must be considered, and, where more than two may be applicable to the same transportation service, they must be considered together and conflicts avoided wherever possible; it being presumed that the carrier and regulatory commissions did not intend to confuse that which should be plain. Pillsbury Flour Mills Company v. Great Northern Railway Company (C.C.A.) 25 F.(2d) 66. If it should develop that two published charges are equally applicable to the same shipment, the lowest will be applied. Western Grain Company v. St. Louis-San Francisco Railway Company (C.C.A.) 56 F.(2d) 160. Also, if one tariff designation is clearly applicable and another of doubtful applicability, the more specific will be followed. In the case of the United States v. Gulf Refining Company, 268 U.S. 542, 45 S.Ct. 597, 599, 69 L.Ed. 1082, the Supreme Court said: "Where a commodity shipped is included in more than one tariff designation, that which is more specific will be held applicable. U. S. Industrial Alcohol Co. v. Director General, 68 I.C.C. 389, 392; Augusta Veneer Co. v. Southern Ry. Co., 41 I.C.C. 414, 416. And where two descriptions and tariffs are equally appropriate, the shipper is entitled to have applied the one specifying the lower rates. Ohio Foundry Co. v. Pittsburg, C., C. & St. L. Ry. Co., 19 I.C.C. 65, 67; United Verde Copper Co. v. Pennsylvania Co., 48 I.C.C. 663."

And thus we come to the thread. In the case at bar, the designated switching tariff is of doubtful application. The line haul clearly applies, and, following the announced rule of the Supreme Court, supra, the applicable charge here involved was for transportation and not switching.

The defendant relies on two additional defenses, prior adjudication by the Railroad Commission of the commonwealth of Kentucky of the same subject-matter, and claimed statutory limitation of two years. Each of these defenses is veiled in doubt, and, in view of the conclusion here reached, it is unnecessary to consider them.

The plaintiff's petition will be dismissed.