MCKINLEY *v.* LONG ET AL.

[No. 28,587.  Filed November 7, 1949.]

640

*Scott McDonald;* and *Kivett, Chambers, Vernon & Kivett,* all of Indianapolis, for appellant.

*Paul G. Davis, John A. Royse,* and *Howard P. Travis,* all of Indianapolis, for appellees.

EMMERT, J.—This is an appeal from an interlocutory order appointing a receiver, after notice and hearing, pending an action brought by James Long, who hereinafter will be referred to as the appellee, for an accounting, after a dissolution of a partnership consisting of the appellee and appellant doing business as the Long-McKinley Company.

Although the burden of proof on the issue of the appointment of a receiver was upon the appellee who was the plaintiff in the trial court, this court will not weigh the evidence on appeal, but will consider the evidence most favorable to him, together with all reasonable inferences that may be drawn therefrom to support the action of the trial court. *Strebel* v. *Bligh* (1915), 183 Ind. 537, 109 N. E. 45; *Mead* v. *Burk* (1901), 156 Ind. 577, 60 N. E. 338; *Kist* v. *Coughlin* (1936), 210 Ind. 622, 1 N. E. 2d 602, 4 N. E. 2d 533; *Royal Academy of Beauty Culture, etc.* v. *Wallace* (1948), 226 Ind. 383, 78 N. E. 2d 32; *Indianapolis Dairymen's Cooperative* v. *Bottema* (1948), 226 Ind. 237, 79 N. E. 2d 399.

When the evidence is so examined the trial court was justified in finding the facts of the situation presented for its consideration as follows: On June 1, 1946, the appellee and appellant executed a written agreement of partnership for the manufacturing and sale of combination storm windows and venetian type awnings, which agreement was to continue from year to year, each partner having the right to terminate the partnership by thirty days' notice given prior to the end of any partnership year. On April 30, 1949, appellant delivered to appellee his written notice of dissolution of the partnership effective June 1, 1949.

During the operation of the partnership the appellee was in charge of the office and sales, while the appel-

lant was in charge of the manufacturing and production activities of the business. The first aluminum awnings were made by August, 1946, and the first storm windows in January, 1947. Until the beginning of 1949, the business was successful and profitable. In 1947 the gross sales amounted to $265,468.46, with a net profit of $39,341.94; in 1948 the gross sales amounted to approximately $500,000 with net profit for that year of approximately $75,000. The net worth of the business shown by the books as of May 1, 1949, was $125,000, which included land and buildings valued at $23,911.35.

However, for the first quarter of 1949 the business was operated at a loss of $4,517.39, which was caused by an increase of labor costs in the sum of $6,181 at a time when there was a substantial decrease in sales. Appellee objected to appellant about overtime pay, which appellant refused to discontinue. But, by the end of April the firm showed a profit for 1949 of $2,216.05. The latter part of 1948 both partners signed an agreement to take over and manage a retail dealer agency in Indianapolis which had become indebted to the firm in an amount between $25,000 and $30,000; that the partnership management of the dealer agency was successful, and the account due the partnership was repaid, but after both partners had agreed to cancel the contract with the existing dealer agency, which was done, and a new contract executed with a substituted dealer agency, the appellant notified appellee he would not be responsible for any loss to the partnership from the business with the new agency.

The appellant without consulting the appellee, placed his brother, L. A. McKinley, upon the payroll at $50 a week, which resulted in the firm paying him $850 without receiving any services whatever in re-

turn. When the appellee discovered this fact he directed the bookkeeper to charge this amount to the account of the appellant, which was done. Later upon directions of the appellant the bookkeeper erased this charge, and the books were changed to show the amount paid to his brother. There also was a dispute between the partners as to the claim of the appellant to the exclusive right to a patent for awnings issued to him during the life of the partnership.

Between the time appellant served notice to terminate the partnership and the expiration of the thirty days' notice, appellee attempted to agree with appellant as to the manner in which the partnership would be liquidated and wound up, but was never able to obtain any offer from appellant as to the manner in which this should be done.[1]

During this thirty-day period, appellant continued to order materials for manufacture, and at the time of the hearing the firm owned a large stock of aluminum and glass which was only suitable for manufacture of storm windows and awnings, which would only have a junk value if sold in a forced liquidation. At the time of dissolution there was outstanding a number of dealer accounts which contained sixty days cancellation clauses which had not been exercised by the partnership. At the time the receiver was appointed the partners had outstanding notes in the sum of $30,000, and did not

---

[1] The partnership agreement failed to provide any specific manner for the winding up of the business. Item 9 of the contract provided: "Upon termination of the partnership for any reason, the business shall be wound up, debts paid and the surplus divided by the partners in accordance with their interest herein." Item 18: "Upon the final dissolution of the firm by lapse of time or otherwise, the said business shall be wound up, debts paid, and the surplus divided between the partners in accordance with their interests herein."

have sufficient liquid assets to meet the obligations of the firm as they matured.

At the time of the hearing the appellant offered to to have the appellee liquidate the partnership, which offer he refused. Appellee insisted that the business be liquidated by receiver under court orders.

·"The view is generally taken that after dissolution the partnership continues in a limited sense in respect to past transactions and existing assets. This includes the winding up or liquidation of partnership affairs, which in turn includes in general the performance of existing contracts, the collection of debts or claims due the firm, and the payment of firm debts." 47 C. J., p. 1122, § 791. The assets of this partnership were in the joint possession of each partner, and each was under the duty to the firm creditors to liquidate the firm assets. 40 Am. Jur., p. 324, § 282; 47 C. J., p. 1132, § 805. But the articles of partnership provided no procedure as between the partners to liquidate the assets and discharge the duty to pay creditors, and under the evidence the trial court had the right to infer the partners could not agree between themselves as to how the business was to be wound up. The partners owned firm real estate, and the difficulties of disposing of this would be increased without the agreement of both partners. Each partner under the law was required to exercise good faith in the firm transactions and toward his other partner, but the appellant had been guilty of misconduct, and the trial court could properly find he had breached his duty to use good faith toward the appellee. See *Fink* v. *Montgomery* (1903), 162 Ind. 424, 68 N. E. 1010; *Vogel* v. *Chappell, Trustee* (1937), 211 Ind. 310, 6 N. E. 2d 953; *Frankfort Construction Co.* v. *Meneely* (1917), 62 Ind. App. 514, 112 N. E. 244.

"Where either party has a right to dissolve the partnership and the agreement between the partners makes no provision for closing up the concern, it was ▪ a matter of course to appoint a manager or receiver on a bill filed for that purpose if they could not arrange the matter between themselves. When it is necessary to preserve the good will of the business, the receiver may be directed to carry it on under the direction of the court until a sale is made." 2 *Clark on Receivers* (2d Ed.), § 914(b), pp. 1336, 1337. By reason of the dissension between the partners and failure to agree as to distribution of joint assets, the value of the partnership assets was in danger of great loss. Under such circumstances the court is fully justified in appointing a receiver. 45 Am. Jur., p. 41, § 45; *Riddle* v. *Whitehill* (1890), 135 U. S. 621, 637, 34 L. Ed. 282, 288. Clause 2 of § 3-2601, Burns' 1946 Replacement (Acts of 1881 [Spec. Sess.], ch. 38, § 245, p. 240), recognizes the right to such equitable relief.[2]

Under the facts in this controversy no other remedy would have been adequate. The firm did not have sufficient liquid assets to pay its current bills. The large inventory of materials for manufacture was in danger of being grossly depreciated unless manufactured into storm windows and awnings. The trial court could properly have found that the physical assets as a part of a going business had a going value which would be lost if they were sold piecemeal. The dealer contracts had not been cancelled, nor could they be cancelled

---

[2] "A receiver may be appointed by the court, or the judge thereof in vacation, in the following cases: . . .

"Second. In actions between partners or persons jointly interested in any property or fund.

". . ."

§ 3-2601, Burns' 1946 Replacement.

until the expiration of a sixty day cancellation notice, thus increasing the liabilities of both partners if the contracts were breached. The receiver was in a position to liquidate the assets as soon as good business judgment would permit, under the proper orders of the trial court, in such a manner that the highest value could be received upon liquidation, and the purchasers of the assets, the creditors and both parties adequately protected.

There is a grave disagreement between counsel as to the effect of certain evidence given at the hearing concerning appellant's offer to permit the appellee to wind up the business without the appointment of a receiver. It is unnecessary here to decide the controversy, but it is sufficient to state that appellee refused to liquidate the business unless he should be appointed the receiver and as such have the protection of the court. Appellant refused to consent to this. "It will be conceded upon general principles that a receiver should be impartial and disinterested. He should be indifferent as between claimants and litigants. No one should be appointed who is in such position that a dual interest might arise between his personal affairs and his duties as a receiver." *Cooper* v. *Morris, Receiver* (1936), 210 Ind. 162, 170, 200 N. E. 222. Although in this case the court upheld the acts of a receiver, who in contemplation of law was not strictly disinterested, yet he was appointed by agreement of all the parties, and the evidence conclusively showed he had exercised the highest degree of care and good faith. In the appeal under consideration there was no agreement by either party for the other to act as receiver.

The appellant places his chief reliance for reversal of the order upon the opinion in *Bufkin* v. *Boyce*

(1885), 104 Ind 53, 3 N. E. 615, but in that case this court said there was no evidence of misconduct or mismanagement on the part of the partner against whom relief was sought. The firm was not a manufacturing partnership, and there is no evidence of any going value or any loss or depreciation of the assets by reason of the liquidation. The case held that mere unfounded distrust of another partner, or disagreement as to the dissolution of the partnership contract were not sufficient grounds in and of themselves for the appointment of a receiver under the particular facts of the case. The authority in this case must be limited to its specific facts, and is not to be construed to permit a defending partner to oust a court of equity of its jurisdiction, after it is properly invoked for adequate cause, by an offer to cooperate with a liquidating partner, or by his offer to undertake the liquidation himself.

The appellant challenges the sufficiency of the order appointing the receiver on the ground that the receiver was appointed for a partnership which is not a legal entity. It is true that a partnership as such has no legal existence apart from the individuals composing it. *State* v. *Krasher* (1908), 170 Ind. 43, 83 N. E. 498; *Lewis* v. *Joseph Hartley & Sons Co.* (1949), 119 Ind. App. —, 83 N. E. 2d 438; *Popovich* v. *Yugoslav National Home Society, Inc.* (1939), 106 Ind. App. 195, 18 N. E. 2d 948; *Turner* v. *Henshaw, Receiver* (1927), 86 Ind. App. 565, 155 N. E. 222. But the appellant was sued as an individual, and it was specifically alleged a partnership existed between the plaintiff and defendant doing business as the Long-McKinley Company. There was no attempt to make the partnership as an entity a party defendant. "If the entry of a judgment be so obscure as not to ex-

press the final determination of the court with sufficient accuracy, reference may, and indeed ought to, be had to the pleadings, and the entire record, when construing the judgment. Freeman Judg., section 45; *Foot* v. *Glover*, 4 Blackf. 313; *Finnagan* v. *Manchester*, 12 Iowa 521; *Fowler* v. *Doyle*, 16 Iowa 534; *Bell* v. *Massey*, 14 La. An. 831; *Hopper* v. *Lucas*, 86 Ind. 44." *Fleenor* v. *Driskill* (1884), 97 Ind. 27, 33.

It is apparent from an examination of the finding and order that Melvin K. Goode was appointed receiver of all the property and assets jointly owned by the partners and used in the partnership business which the law on partnerships treats as property separate from property separately owned by the individuals. The receiver was ordered to operate the business subject to the further order and direction of the court, and we will presume that the trial court will not permit the receiver to operate any longer than would be reasonably necessary to wind up the business, and pay the funds remaining in his hands to those lawfully entitled to receive the same.

Judgment affirmed.

NOTE.—Reported in 88 N. E. 2d 382.