SOUTHERN RAILWAY COMPANY *v.* BRUCE.

[No. 18,108. Filed June 20, 1951. Rehearing denied October 10, 1951. Transfer denied January 18, 1952.]

*Phelps F. Darby* and *William T. Fitzgerald,* both of Evansville, for appellant.

*Volmar A. Franz,* of Tell City, for appellee.

WILTROUT, J.—Appellant brought this action to recover from appellee by reason of an alleged undercharge in freight rates on a rail shipment.

The complaint charges that a small tugboat was shipped to appellee upon two railroad cars; that when it arrived the appellant's agent by mistake collected from appellee a freight charge which was substantially

less than the lawful charges as fixed by the applicable published tariff.

The rate claimed by appellant to be applicable applies, according to the published tariff, to "Tugboats, SU, loose or in packages."

If the craft shipped was not a tugboat, then appellant must fail in its appeal. It is not claimed that any rate other than the one contended for by appellee is applicable if the craft was not a tugboat.

This craft is referred to in a stipulation of the parties as a "Sea Mule" tug. There was testimony that it was, and also testimony that it was not a tugboat. The court made a general finding in favor of appellee.

The evidence was conflicting, and we may not weigh it. We are not at liberty to substitute our judgment for that of the trial court. *Williams* v. *Bent* (1949), 119 Ind. App. 374, 87 N. E. 2d 883; *McKinley* v. *Long* (1949), 227 Ind. 639, 88 N. E. 2d 382.

Judgment affirmed.

Martin, C. J., dissents with opinion.

Bowen, J., not participating.

NOTE.—Reported in 99 N. E. 2d 447.

## ON PETITION FOR REHEARING

WILTROUT, J.—In his petition for rehearing the appellant earnestly insists that the evidence in this case is without conflict as to the nature and character of the shipment transported, by reason of a stipulation of facts made by the parties, and particularly Paragraph 15 thereof. By that paragraph it was agreed that Appellant's Exhibit 1, including a photograph and printed descriptive matter under the photograph truly and correctly states the description, dimensions, size and character of the articles shipped in the two carload ship-

ments in breakdown form. The printed matter contains a detailed physical description of the craft.

Appellant and appellee agree that "it is the nature and character of the commodity shipped and not the use to which it is put which controls in determining the rate applicable." We do not take issue with this.

However, as stated in the original opinion, the evidence as to whether or not a craft of the character shown is a tugboat is conflicting.

Even though we were to assume that the shipment was that of a tugboat, it does not follow that appellant is entitled to recover the alleged undercharges. The rate contended for by appellant applies only to "Tugboats, SU, loose or in packages." Expert witnesses testified as to the meaning of this terminology. Evidence was introduced that "SU" means "set up," as opposed to "KD" or "knocked down," and that the shipment here was "KD." Evidence was also introduced that tugboats in packages means in any kind of a crate or box, and we further gather that "loose" refers to tugboats which are not crated or boxed.

In accordance with the evidence in this case the trial court could properly have based its decision upon the additional ground that the shipment here was neither a tugboat which was set up and loose or a tugboat which was set up and in a package.

Petition for rehearing denied.

NOTE.—Reported in 101 N. E. 2d 68.

## DISSENTING OPINION

MARTIN, C. J.—I cannot agree with the majority opinion in this case.

This is an action by the appellant against the appellee to recover a money judgment for an undercharge in

freight charges on a two-car shipment which moved over four connecting lines of railroad from Lathrop, California, to Tell City, Indiana.

The cause was tried to the court without a jury and upon a complaint in one paragraph, to which appellee addressed an answer of admission and denial.

The trial court made a general finding against the appellant. The court also found, however, that appellee had stipulated during the trial that he was willing to pay appellant the sum of $80.80 plus federal tax, a total of $83.22; and the trial court accordingly in the same entry rendered judgment in favor of appellant and against appellee in the sum of $83.22 and for costs.

The error relied upon by appellant is that the trial court erred in overruling appellant's motion for a new trial. The grounds assigned in the motion were: (1) That the decision and finding of the court is not sustained by sufficient evidence; (2) that it is contrary to law; and (3) that the assessment of the amount of recovery is erroneous, being too small.

The evidence shows that on March 11, 1947, the U. S. Maritime Commission, acting by and through the Stockton General Depot, U. S. Army, shipped to the appellee at Tell City, Indiana, a small tugboat (generally known as a "Sea Mule" tug) ; that the shipment originated at Lathrop, California, on the line of the Western Pacific Railroad Company, and that the shipment was loaded on two freight cars. That one car was Pennsylvania car No. 357829 and the other was C&NW car No. 47138; that when the two carload shipment arrived at Tell City, Indiana, on the line of the Southern Railway Company, the Company's agent at Tell City by mistake collected from appellee, the consignee, only $778.60 as freight charges on each car plus federal tax of $23.36, a total of $1,603.92.

A commodity rate of $2.29 was applied. The tariff used was Item No. 6755, Trans-Continental Freight Bureau Eastbound Tariff No. 3-S, L. E. Kipp's I. C. C. No. 1519. That rate applied on the following:

"Tractors, steam or internal combustion, not including tractors with vehicle beds, vehicle bed frames or fifth wheels, or extra parts other than steam or internal combustion engines."

The correct rate, which is the Fourth Class rate, applies on "tugboats, SU, loose or in packages."

The Fourth Class rate was $4.35 per hundred pounds which the agent at Tell City should have collected in the sum of $3,173.76 plus tax of $95.21. The difference between the amount actually collected from the appellee, the consignee, and the amount of the lawful charges which the appellee, consignee, should have paid represents the undercharge claimed of $1,616.56 plus federal tax of $48.50.

The evidence of the appellee shows that when assembled, this boat could be used as a tow boat, it could be used either for pulling or pushing barges in the river. The size of the boat was 13 feet wide and 38½ feet long. The draft of the boat varied according to the amount of fuel being carried. The normal draft was about 3 feet.

The evidence further shows that the craft was stoutly built. It had "towing knees" at the bow which were designed for no other purpose than for towing barges. It was equipped with two 8-cylinder engines (143 h.p., 3200 revolutions per minute), also with a special 9 to 1 double reduction gear, a fuel tank of 800-gallon capacity, and a 48-inch propeller on a 3-inch diameter shaft, all appropriate for towing barges and other vessels. It had very little space for any cargo on deck.

The evidence of the appellee shows that he. is now using the "sea mule" tug to push barges on the Ohio river.

It was stipulated by the parties to this action "that the defendant purchased the materials and equipment from which was afterward erected the 'sea mule' tugs in question, . . . ."

A stipulation of facts is an express waiver made in court or preparatory to trial, by the party or his attorney, conceding for the purposes of the trial the truthfulness of some alleged fact. It has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted, so that the one party need offer no evidence to prove it and the other is not allowed to disprove it. It is a judicial admission of the fact or facts stipulated. *Schreiber* v. *Rickert* (1943), 114 Ind. App. 55, 50 N. E. 2d 879; *Deffler* v. *Loudenbeck* (1924), 233 Ill. App. 240, 245.

The stipulation, as entered into, was within the authority of counsel, and, not having been set aside or withdrawn, was conclusive on the parties and the court. *Barker* v. *Reynolds* (1932), 94 Ind. App. 29, 179 N. E. 396, 397; *Mid-City Iron, etc., Co.* v. *Turner* (1929), 89 Ind. App. 38, 165 N. E. 760; *Pettit* v. *Continental Baking Co.* (1932), 94 Ind. App. 250, 180 N. E. 607; *American Bridge Co.* v. *The Review Board of the Indiana Employment Security Division and Frank Rempis, et al.* (1951), 121 Ind. App. 576, 98 N. E. 2d 193.

Words that are used in published tariffs are to be given their commonly understood meaning. *Union Transfer Co.* v. *Renstrom* (1949), 151 Neb. 326, 37 N. W. 2d 383.

When .we look at the dictionaries and also at the court decisions along with the evidence in the record, it is clear that the word "tug" as used by the parties in this transaction has the same meaning as the word

"tugboat" as used in the published interstate tariff which is in evidence as Item 4785.

Looking first at the dictionary definitions, we find in Webster's New International Dictionary, Second Edition, Unabridged, the publisher says under the heading "tug":

> "7. Naut. Called also tugboat. A strongly built steam or power vessel, used for towing and now also for attendance on vessels."

We find in the American College Dictionary published by Random House in 1947, under the word "tugboat,"

> "8. A strongly built, heavily powered vessel for towing other vessels."

We find in Webster's New Collegiate Dictionary (1945), under the word "tugboat"—(nautical),

> "A strongly built steam or power vessel used for towing."

We find in Encyclopedia Americana, Volume 27, published in 1949:

> "A small steam vessel having a very large engine of great horsepower and very little storage capacity used for towing large vessels in and out of harbors, and in rivers and canals."

We find in Roget's International Thesaurus (revised edition), published by Thomas Y. Crowell in 1949, at page 174, a reference is made to the words "tugboats" and "tugs" as synonymous.

We find in Bouvier's Law Dictionary (Rawle's Third Revision), Volume 3, page 3340, under the word "tug,"—

> "A steam vessel built for towing; practically synonymous with towboat."

In Vol. 48 Am. Jur., page 336, in the chapter under Towage the textwriter says,—

"The towing vessel is usually, but not necessarily, a small steamer, variously referred to as a 'tug,' 'tugboat,' or 'towboat.'"

In the federal court case of *The J. B. Austin, Jr.* (2 CCA, 1932), 57 F. 2d 80, the meaning of the word "tug" was under consideration in a case involving two separate insurance rates. The question was whether or not a steam vessel serving as a tug for a flotilla of barges and also carrying a cargo of 6,200 bushels of grain should be considered a tug within the meaning of that word used in an insurance policy. The court held that the vessel was a tug notwithstanding the cargo being transported.

Decisions from Interstate Commerce Commission, although not binding on the courts, are *important* and *persuasive*. *Empire Refining Co.* v. *Davis* (DC Okla., 1925), 6 F. 2d 305; *Fort Worth & Denver City Ry. Co.* v. *Childress Cotton Oil Co.* (DC Tex., 1942), 48 F. Supp. 937, affirmed 141 F. 2d 558.

The case of *R. C. Huffman Construction Company* v. *Louisville & Nashville Railroad Company* (1934), 200 I. C. C. 337, was a tugboat case. The boat was shipped from New Orleans to Wilmington, N. C., and moved over several lines of railroad. The shipment was delivered to the initial carrier as "one tugboat." The consignee contended that the higher rate did not apply because the shipment consisted in part of tools, repair parts for a dredge, and steel cable. The Interstate Commerce Commission in the reported decision referred with approval to the dictionary definition of a "tug," as stated in Funk & Wagnall's Standard Dictionary as follows:

"A stoutly built steam-vessel with powerful engines, of unusual draft, and adapted for towing other vessels."

The Commission recited the fact that the boat was used not only for towing purposes but also as a tender to a dredge. The higher rate was held applicable and the complaint filed by the consignee was dismissed.

Under the law, appellant must collect and appellee must pay the full amount of the lawful freight charges regardless of any misunderstanding or mistake in quoting the rate. Failure to collect this undercharge from appellee would amount to an unlawful discrimination which the Interstate Commerce Act prohibits.

It is contended by the appellee that the tugboat was a machine or machinery and the commodity rate was a proper tariff to apply to the shipment, but it is settled law that the more specific designation will be followed. *United States* v. *Gulf Refining Co.* (1924), 268 U. S. 542, 546, 69 L. Ed. 1082; *Pillsbury Flour Mills* v. *Great Northern Ry. Co.* (8 CCA, 1928), 25 F. 2d 66; *Boone* v. *United States* (6 CCA, 1940), 109 F. 2d 560; *Louisville Water Co.* v. *Illinois Central R. Co.* (DCWD Ky., 1936), 14 F. Supp. 301, 304; *Murray* v. *Gulf C&SF Ry. Co.* (DCND Tex., 1945), 59 F. Supp. 366.

An interstate tariff rate such as Item 4785, duly published and filed with the Interstate Commerce Commission, stands as a lawful charge until abrogated by the Commission. *Cleveland, etc. Railroad Company* v. *The Talge Mahogany Company* (1916), 185 Ind. 11, 112 N. E. 890; *Wabash Railroad Čo.* v. *Priddy* (1913), 179 Ind. 483, 101 N. E. 724.

A tariff is binding on both shipper and carrier. *Wabash Railroad Co.* v. *Priddy, supra; T. & M. Transportation Co.* v. *S. W. Shattuck Chemical Co.* (10 CCA,

1947), 158 F. 2d 909; *Texas & N. O. R. Co.* v. *Wolfson* (Tex. Civ. App., 1929), 23 S. W. 2d 455.

A suit may be maintained by an interstate carrier to recover the difference between a lawful freight charge and the amount actually paid for the transportation service. *Cleveland, etc. R. Co.* v. *The Talge Mahogany Co., supra; Louisville etc. R. Co.* v. *Maxwell* (1915), 237 U. S. 94, 59 L. Ed. 853, L. R. A. 1915E 665.

In the case of *Empire Refining Co.* v. *Davis, supra,* the court said:

> "The technical subject of tariff construction is the one which ordinarily the Commission, because of its composition of members with special experience, knowledge and training in that subject, is better able to correctly solve than the courts, and its decisions are a helpful guidance to the courts in arriving at correct conclusions in such matters."

In the case of *Louisville & N. R. R. Co.* v. *Maxwell, supra,* the court said:

> "The rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict, and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination."

"Sea mule" is merely a trade name. The shipment was a tug or tugboat.

The sole issue in this case is a question of law in the interpretation of the applicable tariff and the determination of the legal rate. It is my opinion that "tugboats, SU, loose or in packages," specifically describes the two carload shipment and hence the class rate of $4.35 was the lawful and applicable rate.

The judgment of the court was contrary to law, and the trial court erred in overruling appellant's motion for a new trial.

The judgment should be reversed, with instructions to sustain appellant's motion for a new trial.

Note.—Reported in 99 N. E. 2d 447.